Donald R. MELLO and Barbara Jane Mello, Plaintiffs,

v.

Joyce L. WOODHOUSE, Steve Cozine, John A. Caserta, Sam Palazzolo, Clair Haycock, Marvin A. Leavitt, and O.C. Lee, as Members of the Public Employees' Retirement Board of the State of Nevada, Will Keating, as Executive Officer of the Public Employees' Retirement Board of the State of Nevada, and Legislators' Retirement System, Defendants.

No. CV–N–90–242–ECR.

United States District Court, D. Nevada.

Jan. 24, 1991.

James Shields Beasley, Beasley, Holden & Brooks, Reno, Nev., for plaintiffs.

Dana K. Sammons, Deputy Atty. Gen., Carson City, Nev., for defendants.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

In 1963, plaintiff Donald Mello ("plaintiff") was appointed to the Nevada State Assembly. Subsequently, he was elected and served until the end of 1982, for nineteen years. On January 1, 1983, plaintiff became a member of the Nevada State Senate. His term was due to expire eight years later, at the end of 1990.

In June, 1989, the Nevada legislature, including plaintiff, amended the law governing retired legislators' pensions. Under the old law, a sixty year old or older legislator with ten years service in the legislature could retire with full retirement benefits. If a legislator with at least ten years service retired at an age under sixty, his or her benefits were reduced by six percent of the full amount for each full year under sixty, and an additional one-half percent for each additional month.

Under the new law, a legislator with thirty years service could retire at any age with full retirement benefits. Further, a

legislator with at least five years service could "purchase" up to five additional years of service to reach the thirty year peak. When the legislature enacted the law in June, 1989, plaintiff had accrued approximately twenty-seven years of service. He was also under sixty years old. While plaintiff's term did not expire until the end of 1990, he decided to take advantage of the new retirement law and retire around September 30, 1989.

After correspondence between plaintiff and the Retirement Board, the Retirement Board informed plaintiff that he would have to purchase three years of service to bring him up to thirty. The additional years would cost approximately $40,000. Plaintiff had to purchase the additional years because at retirement, he would be under sixty. In exchange, plaintiff would receive full retirement benefits.

Plaintiff decided to retire on September 30, 1989. In September, plaintiff borrowed $92,600 against his residence. Besides purchasing the additional years of service, plaintiff paid off the old mortgage and purchased additional land. On September 27, 1989, plaintiff and the Retirement Board entered into a contract under which plaintiff bought the additional years in exchange for full retirement benefits for the lives of plaintiff and his wife. On October 1, 1989, plaintiff retired.

On October 26, 1989, plaintiff received his first monthly retirement check of approximately $2650. On November 21, 1989, the Nevada legislature repealed the new retirement law. As a result, the old law once again governed plaintiff's retirement benefits. The Retirement Board wrote a letter to plaintiff informing him of the repeal, cancelling the contract, and recalculating plaintiff's monthly benefit at $425. The Board also tendered to plaintiff the money he used to purchase the three additional years. To this date, plaintiff has not accepted or negotiated the check.

On May 30, 1990, plaintiffs filed a complaint in this court against the Director of the Retirement Board, the members of the Retirement Board, and the Legislators' Retirement System. On August 21, 1990, plaintiffs filed an amended complaint alleging that the Nevada legislature and the members of the Retirement Board violated Article I, Section 10 of the United States Constitution, the Contracts Clause. Plaintiffs also assert that actions of the legislature and members of the Board violated the Due Process Clauses of the fifth and fourteenth amendments. Finally, plaintiffs allege that defendants are estopped to deny plaintiffs' vested interest in the Legislators' Retirement Fund.

On October 3, 1990, defendants filed an amended answer, asserting, among other things, that the Eleventh Amendment bars this court from hearing this case. On October 24, 1990, plaintiffs filed a motion for summary judgment (document # 24). In their motion, plaintiffs offered support for their position that the Eleventh Amendment does not bar this action.

On December 12, 1990, defendants, in one document (# 26), filed an opposition to plaintiffs' motion for summary judgment and a cross motion for summary judgment. In their amended answer (document # 23), defendants' third affirmative defense stated: "Defendants allege that they are immune from this action pursuant to the Eleventh Amendment of the United States Constitution." In their cross motion for summary judgment, defendants provided a general analysis of Eleventh Amendment doctrine, but did not explicitly assert that the Eleventh Amendment bars this action. After defendants filed their opposition and cross motion, neither party addressed the Eleventh Amendment issue again.

On December 27, 1990, plaintiffs filed in the same document (# 28) an opposition to defendants' cross motion for summary judgment and a reply to defendants' opposition to plaintiffs' motion for summary judgment. On January 10, 1991, defendants filed a reply to plaintiff's opposition to defendants' cross motion for summary judgment (document # 31).

■ Before we may address the substantive issues the facts in this case raise, we must determine whether the Eleventh Amendment bars this court from hearing this controversy. As stated, defendants

assert in their amended answer that the Eleventh Amendment bars this action in federal court, but do not press the assertion. However, given that they raised the Eleventh Amendment as an affirmative defense, alluded to the issue in their brief (# 26), and that waivers of Eleventh Amendment immunity must be explicit, we feel obligated to decide whether the Eleventh Amendment bars this court from hearing this case.

■ The Eleventh Amendment provides: The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. In *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), the Supreme Court held that the Eleventh Amendment extends to suits by citizens of State X against State X. Thus, the Eleventh Amendment applies in this case, where plaintiffs, citizens of Nevada, sue defendants (be them the state of Nevada, extensions of the state of Nevada, or individuals not extensions of the state of Nevada) who are either extensions of Nevada, or citizens of Nevada.

Congress may explicitly abrogate a state's sovereign immunity or a state may explicitly waive its sovereign immunity. All parties agree that Nevada has not waived its sovereign immunity. Further, since the Eleventh Amendment was enacted after the Contracts Clause, plaintiffs cannot point to any subsequent amendment or federal law abrogating Nevada's sovereign immunity in Contracts Clause cases. Regarding plaintiffs' due process claim, plaintiffs point to no statutory or constitutional language abrogating Nevada's sovereign immunity on the due process claim. Thus, Nevada has not waived its immunity and Congress has not abrogated Nevada's immunity.

■ Consequently, we must determine whether plaintiffs have sued the state of Nevada. If they have, the suit is barred in this court by the Eleventh Amendment. If they have not, this court may hear the merits of the case. On the face of the complaint, plaintiffs do not sue Nevada. They sue members of the Public Employees Retirement Board of the state of Nevada, its director, and the Legislators' Retirement System. However, "When the suit is brought only against state officials, a question arises as to whether that suit is a suit against the State itself." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). "The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.' Thus, the general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Id.* In this case a decree against defendants would operate against Nevada because forcing defendants to perform under the contract would require Nevada to expend money from its state treasury. Thus, in this case, the suit is, in effect, a suit against Nevada.

■ However, in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court held that a suit challenging the constitutionality of a state official's action is not one against the State. That is, a plaintiff can sue a state official instead of a state or state agency if the plaintiff alleges that the official acted unconstitutionally. To the extent plaintiffs sue the Legislators' Retirement System, their suit does not survive Eleventh Amendment scrutiny.

NRS § 218.2373 provides:

**Legislators' retirement system established**—A system of retirement for all benefits at retirement or death for legislators is hereby established and shall be known as the legislators' retirement system.

NRS § 218.2374 provides:

**System administered by public employees' retirement board; rules**—The legislators' retirement system shall be administered by the board, which may make all necessary rules for the administration of the system.

As is evident from NRS §§ 218.2373 and 218.2374, the Legislators' Retirement System is merely a "system" to be administered by a board. The system is not an individual and the Nevada legislature has not provided the system the capacity to sue or be sued. Thus, the *Young* exception does not apply. Further, plaintiffs have not alleged that the Legislators' Retirement System acted unconstitutionally. In their motion for summary judgment, plaintiffs admit that they seek injunctive and declaratory relief to enjoin unconstitutional conduct against the director and members of the Public Employees Retirement Board only (document # 24, page 4, lines 9–25). Nowhere do plaintiffs assert that the Legislators' Retirement System acted unconstitutionally. Thus, the suit against the Legislators' Retirement System must be dismissed. This leaves us with the members and director of the Public Employees Retirement Board as defendants.

In addition to asserting that the Nevada legislature acted unconstitutionally in repealing the new retirement law, plaintiffs allege that all named defendants except the Legislators' Retirement System acted unconstitutionally in cancelling the contract (see document # 24, page 4, lines 15–26). Thus, at first blush, *Young* appears to allow this court to hear this suit.

However, the theory of *Young* has not been provided an expansive interpretation. *Pennhurst*, 465 U.S. at 102, 104 S.Ct. at 909. "In particular, *Edelman [v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)] held that when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive damages." *Id.* 465 U.S. at 102–03, 104 S.Ct. at 909–10.

These general principles guide us in evaluating plaintiffs' claims. Plaintiffs assert that they seek only injunctive relief against defendants. All they ask is that we force defendants to comply with the contract. Thus, plaintiffs argue, they seek only prospective injunctive relief. While this argument appears meritorious at first blush, we must look further into the nature of the relief plaintiffs seek.

■ "In discerning [whether a suit is really against the state], we look to the substance rather than to the form of the relief sought." *Papasan v. Allain*, 478 U.S. 265, 279, 106 S.Ct. 2932, 2941, 92 L.Ed.2d 209 (1986). "Simply asking for injunctive relief and not damages *does not* clear the path for a suit." *Ulaleo v. Paty*, 902 F.2d 1395, 1399 (9th Cir.1990). Thus, just because plaintiffs formally seek injunctive and declaratory relief does not provide them with this court as a proper forum.

■ In determining the substance of the relief plaintiffs seek, we focus on three considerations courts have developed throughout the evolution of Eleventh Amendment doctrine. First, when a judgment in favor of a plaintiff would require a depletion of the state treasury as the primary award, courts have held that the suit is against the state even if the plaintiff named only individuals as defendants. In *Ex parte Young, supra*, the first case where the Court allowed a suit against a state official, the Court held: "A decree in favor of plaintiff won't affect the state treasury." *Id.* In *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Supreme Court refused to allow plaintiffs to sue Edelman, a state official, because "these funds will obviously not be paid out of the pocket of … Edelman." *Id.* at 664, 94 S.Ct. at 1356. In *Pennhurst, supra*, the Court reiterated this rule ("suit is against sovereign if judgment sought would expend itself on public treasury").

The Ninth Circuit vigorously followed this rule in *Jackson v. Hayakawa*, 682 F.2d 1344 (9th Cir.1982). The court held: "the most 'crucial question … is whether the named defendant has such independent status that a judgment against the defendant would not impact the state treasury …'" *Id.* at 1350. A defendant state official with independent status acts unilaterally and is separate from the state. A defendant without independent status does not act separately from the state. The *Hayakawa* court held that when a judgment against a defendant impacts the state treasury, a

defendant is not independent from the state.

■ In our case, a judgment in favor of plaintiffs would significantly impact the state treasury, not the personal bank accounts of defendants. Consequently, while plaintiffs seek an injunction forcing compliance with the contract, what they really ask for is an injunction to pay money for an alleged breach of contract. Thus, under *Hayakawa*, since a judgment against defendants would impact the Nevada treasury, defendants do not have independent status and plaintiffs' suit is essentially against the state of Nevada.

In *Almond Hill School v. U.S. Dep't of Agriculture*, 768 F.2d 1030 (9th Cir.1985), the Ninth Circuit held that monetary effects on a state treasury can be acceptable if they are necessarily incident to compliance with a prospective order. *Id.* at 1034. However, in this case, granting plaintiffs their desired relief would not yield incidental effects on the Nevada treasury. Rather, forcing defendants to perform the contract, while injunctive in form, would substantively and as its primary relief, require the Nevada treasury to deplete its balance by paying money to plaintiffs. Thus, even under *Almond Hill*, granting relief would improperly tap the state's treasury.

■ Second, courts have distinguished situations in which a plaintiff seeks relief to stop an ongoing violation of the constitution, from situations where the violation has already occurred and does not continue. In the former, relief against the state official is proper. In the latter, relief against the state official is not proper. *Papasan, supra*, 478 U.S. at 277–278, 106 S.Ct. at 2939–40; *Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985).

This distinction has particular relevance in this case because we have a contract allegedly unconstitutionally breached. To the extent plaintiffs assert repealing the new retirement law was unconstitutional, plaintiffs may not recover because the named defendants did not repeal the law. Thus, we focus on the named defendants' actions of cancelling the contract. We must determine whether an allegedly ongoing constitutional violation exists, or whether the allegedly unconstitutional act has ended.

In *Ex parte Young, supra*, the Court held that a United States District Court could enjoin a state official clothed with the duty to enforce state laws who threatens to and is about to unconstitutionally commence civil or criminal proceedings, from taking such action. In *Young*, the Court enjoined the Attorney General of Minnesota from judicially forcing plaintiffs to comply with railroad rate laws. However, in our case, defendants are not in the process of acting unconstitutionally, nor are they about to. If there is any constitutional violation, it has come and gone. If there is any constitutional violation, it occurred when defendants cancelled the contract.

Further case law supports the conclusion that the allegedly unconstitutional act has occurred and ceased. Plaintiffs may argue that the violation is ongoing because each time defendants pay plaintiffs $425 instead of $2650, a breach of the contract occurs. However, in this situation, defendants unequivocally repudiated the contract when they sent plaintiffs a letter cancelling the contract. Thus, under contract law, the breach, if any, occurred when defendants informed plaintiffs of the cancellation. Further, even though granting plaintiffs their desired relief would require defendants to make payments in the future, the relief would still be remedying a past violation because "It is in substance the award, as continuing income rather than as a lump sum [up front], of an accrued monetary liability." *Papasan, supra*, 478 U.S. at 281, 106 S.Ct. at 2942.

In *Green, supra*, the Court noted that the relevant inquiry regarding ongoing violations is whether any prospective injunctive relief could prevent a continuing violation of federal law. In our case, the answer is no. As stated, the violation has occurred and ceased. Prospective injunctive relief would only require defendants to pay plaintiffs money for a past violation.

Support for the proposition that the alleged violation has ceased is most apparent in *Papasan, supra.* In that case, plaintiffs sued state officials (trustees), claiming that the state was denying them benefits of land that the United States had granted in trust to the state. The trustees had used the land for a purpose not permitted by the trust. Plaintiffs asserted a Contracts Clause claim against defendant trustees, claiming that defendants breached an implied contract arising from the trust to use the land properly.

In concluding that the violation, if any, had already occurred, and that as a result the Eleventh Amendment barred the suit, the Court held:

> The distinction between a continuing obligation on the part of the trustee and an ongoing liability for past breach of trust is essentially a formal distinction ... we rejected in *Edelman.*

*Papasan* at 280, 106 S.Ct. at 2941. In our case, we can analogize the continuing obligation of the trustee to live up to the trust to the continuing obligation of the members of the retirement board to live up to the contract. The ongoing liability for past breach of trust for using the land improperly is analogous to the ongoing liability for past breach of contract for repudiating the contract. Thus, while the liability of paying plaintiffs under the contract would be ongoing should plaintiffs prevail, the breach, or constitutional violation, has already occurred and ceased. Since the Supreme Court refused to distinguish between the ongoing liability and the ongoing violation, we must also.

> The *Papasan* Court also held:
>
> The characterization in [Edelman] of the legal wrong as the continuing withholding of accrued benefits is very similar to the petitioner's characterization of the legal wrong here as the breach of a continuing obligation to comply with the trust obligations.

*Papasan* at 280–281, 106 S.Ct. at 2941–42. In both *Edelman* and *Papasan*, the court found that the alleged violation was not continuing. It had ceased. Thus, while plaintiffs here could irrelevantly character-

ize the legal wrong as defendants' continued refusal to pay benefits under the contract, the proper characterization of the legal wrong is the alleged breach that came and went when defendants unequivocally repudiated the contract.

Since the breach has ceased, an award to plaintiffs would necessarily relieve a constitutional violation that is not ongoing. Further, since granting plaintiffs their desired relief in effect awards plaintiffs money, the Eleventh Amendment precludes plaintiffs from pursuing their case in this court because they essentially seek monetary relief for a past violation and no ongoing violation exists for this court to enjoin.

■■■ Third, we must focus on what act or acts plaintiffs claim constituted constitutional violations. In *Papasan*, the Supreme Court held "[The] *Young* [exception] applies only where the underlying authorization upon which the named official acts is asserted to be illegal." *Papasan* at 277, 106 S.Ct. at 2940. In this case, the underlying authorization upon which defendants acted came directly from the state legislature. Under *Papasan*, then, for the *Young* exception to apply, plaintiffs must assert that the Nevada legislature's action in repealing the new retirement law was unconstitutional. However, if this is plaintiffs' argument, plaintiffs have sued the wrong defendants. Of course, plaintiffs could not sue the legislature. On the other hand, if plaintiffs assert that defendants acted unconstitutionally in cancelling the contract, but the legislature did not act unconstitutionally in repealing the law, the *Young* exception does not apply. Thus, plaintiffs must assert that the legislature acted unconstitutionally in repealing the new law and that defendants acted unconstitutionally in cancelling the contract.

■■■ However, in this situation, arguing that both the legislature and defendants acted unconstitutionally is flawed. In *Hagood v. Southern*, 117 U.S. 52, 6 S.Ct. 608, 29 L.Ed. 805 (1886), the state passed a law allowing bondholders of the Blue Ridge Railroad to pay their taxes with their bonds. Subsequently, the state passed a law disallowing payment of taxes with

bonds. Bondholders sued state officers claiming that the law disallowing payment of taxes with bonds impaired an implied contract between the bondholders and the state allowing payment of taxes with bonds. In disallowing the suit under the Eleventh Amendment, the Court held that notwithstanding the Constitution, the alleged contract could not be enforced, without the state itself being a party to the proceedings, by coercing the state officers, whose authority to accept the bonds as payment had been withdrawn in violation of the alleged contract, to act. *Id.* at 68, 6 S.Ct. at 615.

Similarly, notwithstanding the Constitution, we cannot enforce the contract between plaintiffs and the Board without the state being a party. Notwithstanding the Constitution, the legislature's repeal of the new retirement law has rendered the contract between plaintiffs and the Retirement Board illegal under state law. As a result, the legislature, and not defendants, have impaired the contract by repealing the new retirement law. Given that repealing the law rendered the contract illegal, defendants' refusal to perform under the illegal contract cannot be considered an impairment of the contract. Thus, the state's action withdrew the authority of defendants to act, in violation of the contract. However, fault, if any, lies with the legislature. Consequently, to properly pursue this claim, the legislature must be a party, which of course, it cannot be.

In conclusion, all three considerations that courts have focused on over the years cut against this court's jurisdiction. Consequently, since plaintiffs' suit is essentially against the State of Nevada, and since the *Young* exception does not apply, the Eleventh Amendment bars this court from hearing this case.

IT IS,. THEREFORE, HEREBY ORDERED that this action is DISMISSED on the grounds that this court lacks subject matter jurisdiction to hear this case under the Eleventh Amendment.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment (document # 24) and defendants' cross motion for summary judgment (document # 26) are DENIED as moot.

IT IS FURTHER ORDERED that the clerk shall enter judgment.