DALE v. WEBSTER COUNTY.

1. **Counties**: ACTION AGAINST: PRIOR PRESENTMENT OF CLAIM TO
   SUPERVISORS: REQUISITES OF. Section 2610 of the Code, providing
   that no action shall be brought against any county on an unliqui-
   dated demand until the same has been presented to the board of
   supervisors and payment demanded, does not require that the
   claimant shall produce his evidence, but it is enough if the board
   is informed of the amount of the claim, and the grounds on which
   it is made, with sufficient clearness to enable it to investigate
   the facts and reach an intelligent decision.

2. **Negligence**: DEFECT IN BRIDGE : DEATH OF PEDESTRIAN : CONTRIB-
   UTORY NEGLIGENCE : QUESTION OF LAW OR FACT. Defendant's
   bridge had for two years been wanting a hand-rail for a few feet
   between its two spans. Plaintiff's intestate, who crossed the bridge
   frequently, and must be charged with knowledge of the want of a
   hand-rail at the point named, was crossing the bridge at night,
   reading a letter as he walked, by the light of a lantern. He fell
   over the bridge at the point where the hand-rail was wanting, and
   was killed. Some of the evidence tended to show that there was a
   large spike driven horizontally into and extending about four
   inches from the wheel-guard, and about five inches above the
   floor of the bridge, and that the decedent's foot may have caught
   upon this spike and caused him to stumble and fall from the bridge.
   *Held*—

   (1) That, since defendant was not charged with negligence by
       reason of the spike, nor shown to be chargeable with notice of
       it, and since the decedent had certainly as much knowledge
       of it as defendant, and was therefore bound to use at least
       ordinary care to avoid it, there could be no recovery on that
       ground.

   (2) That decedent, knowing as he did the alleged defect in the
       bridge, was guilty of contributory negligence in crossing the
       bridge, as he did, reading a letter by the light of his lantern,
       instead of looking out for his own safely as he approached
       the place of danger.

(3) That, since he must have read the letter premeditatedly, and thus failed to use ordinary care for his own safety, and since it is clear that by the use of ordinary care he would have avoided the accident, the question of his contributory negligence was not one of fact for the jury, and the court erred in refusing to direct a verdict for defendant. (See opinion for cases followed and distinguished.)

*Appeal from Webster District Court.*—HON. S. M. WEAVER, Judge.

FILED, DECEMBER 22, 1888.

PLAINTIFF, as administratrix of James Dale, deceased, seeks to recover damages caused by his death. There was a trial by jury, and a verdict and judgment were rendered in favor of plaintiff for the sum of six thousand dollars, and costs. The defendant appeals.

*Albert E. Clarke*, for appellant.

*Chase & Chase* and *G. F. Tucker*, for appellee.

ROBINSON, J.—On the eleventh day of October, 1884, the decedent was killed by falling from a bridge constructed by defendant over the Des Moines river at Lehigh. The bridge was a little over three hundred feet long, and was divided into two spans of equal length. These rested on two abutments, and a stone pier built to a height of about twenty-seven feet from the bottom of the river. Wheel-guards, made of timber about six inches square, and raised two or three inches from the floor, were placed on each side of the bridge. Guard-rails were fastened to the superstructure of the spans at a height of about three feet from the floor, excepting at the spaces between the spans. These spaces were about eight inches wide at the floor of the bridge, and nearly six feet wide at a height of three feet. The bridge furnished the chief, if not the only, means of communication between the two portions of the town of Lehigh, one of which was on the east, and the other on the west, side of the river. It was much used

by teams and pedestrians, the latter usually walking
on the north side of the bridge, the floor of which
was about fifteen feet wide between the wheel-guards.
It is conceded by appellee that there had been no hand-
rails between the spans for two years. Dale had lived in
Lehigh three years at the time of his death. His home
was on the east side of the river, and the post-office was
on the west side. Soon after supper of the day of his
death he went over the bridge for his mail. As he was
returning home a short time afterwards, he was over-
taken on the bridge, and about fifty feet from its west
end, by three men. These state that when they passed
him he was carrying a lighted lantern under his left arm,
and was holding a letter with one, and, as they think,
with both hands, which he was reading. He did not
seem to notice them, and once stumbled against the
north side of the bridge. They passed on, and when
nearing the end of the bridge, heard a sound as of
breaking glass. They at once turned about, but Dale
and his light had disappeared. They went back to the
pier, and discovered that Dale was lying on the rocks,
at its base, just south of the northeast corner, dead.
His skull was crushed at the right temple, and he had
evidently walked or stumbled through the north opening
between the spans over the pier. A letter was found
near him, folded, and the envelope a little further away.
Plaintiff contends that defendant was negligent in not
placing hand-rails between the spans. Defendant denies
this; denies that it had notice or knowledge of the
alleged defect; and insists that Dale's death was the
result of his own negligence, in that he knew of the
alleged defect, and did not use due care to avoid it.

I. In June, 1885, plaintiff caused to be presented
to the board of supervisors of Webster county a claim,
of which the following is a copy: "The
County of Webster in the State of Iowa, to
Martha Dale, Administratrix of Estate of
James Dale, Deceased: For damages for
loss of life of James Dale by falling from
the bridge across the Des Moines river, at Lehigh, in

1. COUNTIES:
action
against: prior
presentment
of claim to
supervisors:
requisites of.

said county, in September, A. D. 1884, by reason of the negligence of said county, $10,000." This was verified by an attorney for plaintiff. Appellant contends that the bill presented was too indefinite to enable the board of supervisors to act thereon understandingly; that it should have been accompanied with some competent proof; that it should have contained evidence of the death of Dale, and that the bridge was defective; and that it should have specified wherein the county had been negligent. We do not think these objections are well taken. Section 2610 of the Code provides that "no action shall be brought against any county on an unliquidated demand until the same has been presented to such board [of supervisors] and payment demanded." This does not require that the claimant shall produce his evidence, but it is enough if the board is informed of the amount of the claim, and the grounds on which it is made, with sufficient clearness to enable it to investigate the facts, and reach an intelligent decision. While it may be desirable in many, if not in all, cases for the claimant to inform the board fully as to all the facts involved in his claim, and even to submit evidence to substantiate it, yet he is not required to do so. The demand made by plaintiff informed the board of the amount of her claim, and in a general way of its nature, and the facts on which it was based. This would have enabled the board to investigate the case upon its merits, and was sufficient.

II. Appellant contends that plaintiff is not entitled to recover, for the reason that the evidence shows 2. NEGLIGENCE: defect in bridge: death of pedestrian: contributory negligence: question of law or fact. without conflict that negligence on the part of decedent contributed directly to his death. This court has frequently held that when the person injured knew of the danger which caused the injury, and could, without serious inconvenience or by the exercise of due care, have avoided it, his failure to do so will defeat a recovery. *Hartman v. City of Muscatine*, 70 Iowa, 512; *Fulliam v. City of Muscatine*, 70 Iowa, 438; *McGinty v. City of Keokuk*, 66 Iowa, 726; *Parkhill v.*

*Town of Brighton*, 61 Iowa, 108; *Haley v. Chicago & N. W. Ry. Co.*, 21 Iowa, 24; *O'Keefe v. Chicago, R. I. & P. Ry. Co.*, 32 Iowa, 469. See, also, *Cunningham v. Lyness*, 22 Wis. 247; *Gilman v. Inhabitants of Deerfield*, 15 Gray, 580; *Mynning v. Railroad Co.* [Mich.] 35 N. W. Rep. 811; *Cummins v. City of Syracuse*, 100 N. Y. 637; *Dubois v. City of Kingston*, 6 N. E. Rep. 273. If, therefore, decedent knew of the absence of a hand-rail at the space through which he fell, due care required him to avoid the danger caused thereby; and that he could have done without inconvenience and by the exercise of slight care. There can be but one conclusion as to his knowledge of the defect. It was easily seen, had existed for two years, and was within a foot or two of the portion of the bridge which was habitually used by decedent and others in walking over it. It is not possible that it could have escaped the notice of decedent. But it is said that he had been at work in the country during several months preceding his death, and that he had the right to rely upon the presumption that the persons charged with that duty would make the repairs necessary to place the bridge in a safe condition. We hardly think that under the facts of this case the decedent would have been justified in indulging such a presumption. The defect had been of long standing. It was not one which interfered with the use of the bridge, and it does not appear that any complaint of its existence had been made, nor that the county had given any indication of a purpose to make repairs. While these facts would not relieve the county from liability, yet they were sufficient to require of decedent as much care as though he knew that the repairs had not been made. But we think he must be held to have had actual knowledge of the condition of the bridge. The uncontradicted testimony of plaintiff shows that he crossed the bridge after his return from the country, and before the day of his death, and he passed over it but a short time before his death. On his return from the post-office he carried a lighted lantern, and the conclusion is irresistible that he used no care to

avoid the danger, but that, on the contrary, he was guilty of gross carelessness. He stumbled against the north side of the bridge at a point only about one hundred feet from the place where he fell, and should have heeded that accident as a warning of danger.

III. Some of the evidence tended to show that there was a large spike driven into and projecting about four inches from the wheel-guard on the north side of the bridge, and just west of the open space between the spans, and that it was about five inches from the floor of the bridge ; that there was a mark on one of the boots of deceased, made by this spike, and that it was probable that decedent had been tripped by striking his foot against the spike, and thrown headlong through the open space over the top of the pier to the rocks below. Plaintiff contends that the accident occurred in that manner. But defendant is not charged with negligence by reason of the spike, nor is it shown to be chargeable with notice of it. If it existed as claimed by plaintiff, decedent certainly had as much knowledge of it as did defendant, and should have exercised ordinary care at least to avoid it. *Achtenhagen, Adm'r, v. City of Watertown*, 18 Wis. 331.

THE SAME.

IV. It is insisted by appellee that the question of contributory negligence was for the jury alone to determine ; that while the evidence may tend to show that decedent was not using due care when he stumbled against the bridge before he reached the opening, yet there is no evidence to show negligence when he reached it ; that the fact that the letter was found at the foot of the pier, folded, shows that he was not reading it at the time of the accident, and that it was competent for the jury to give weight to those natural instincts of men which lead them to avoid injury, in considering the question of contributory negligence. The case of *Kendall v. City of Albia*, 73 Iowa, 241, is cited by appellee. In that case the person injured slipped on a sidewalk just before reaching a defect of which he had knowledge, and immediately afterwards he stepped

THE SAME.

into the defect. It was held that it was proper for the jury to determine whether the effect of the slipping in withdrawing the attention of the person injured from the defect was sufficient to relieve him from negligence. In *Cantwell v. City of Appleton*, 71 Wis. 473, also cited by appellee, the person injured walked into a pit in broad daylight. She could have seen it, but she did not know of it, and there was nothing on the sidewalk to indicate its presence. It was held that the question of negligence on her part was for the jury to determine. But these and other cases of a like character are not decisive of this case. It is shown that decedent was in the prime of life, in good health, robust and intelligent. He knew of the defect. There was nothing to prevent his walking in the center of the roadway. He carried a lantern. There was nothing to divert his attention, unless it was the letter which he had been reading, and he read that with premeditation necessarily. The undisputed facts show that had he used ordinary care the accident could not have happened. No other conclusion would be justified. There was therefore no question as to negligence to be submitted to the jury. It was one of law, to be determined by the court. *Whitsett v. Chicago, R. I. & P. Ry. Co.*, 67 Iowa, 159 ; *Milne v. Walker*, 59 Iowa, 188 ; *McLaury v. City of McGregor* 54 Iowa, 718 ; *Mynning v. Railroad Co.*, [Mich.] 35 N. W. Rep. 811.

V. We have spoken of the absence of the rail between the spans as a defect. It is proper to say that defendant does not concede that it was one, and whether it was or not was a question of fact. Other questions discussed by counsel are not likely to arise on another trial. For the error of the court in refusing to take the case from the jury its judgment is

REVERSED.