**CENTURY PARK CONDOMINIUM ASSOCIATION, a corporation, Plaintiff and Appellee,**

v.

**NORWEST BANK BISMARCK, NATIONAL ASSOCIATION, a corporation, Defendant and Appellant.**

Civ. No. 870270.

Supreme Court of North Dakota.

March 7, 1988.

Rausch & Rausch, Bismarck, for plaintiff and appellee; argued by James P. Rausch.

Lawrence R. Klemin (argued), Bismarck, for defendant and appellant.

LEVINE, Justice.

Norwest Bank Bismarck, National Association, a corporation (the Bank), appeals from a summary judgment in an action by Century Park Condominium Association, a corporation (the Association), to recover unpaid assessments for common expenses levied on unconstructed condominium units. The judgment was based upon the court's determination that the Bank voluntarily purchased unconstructed condominium units, knowing that they were subject to assessments for common expenses. We reverse and remand.

In 1979, Dean and Deanna Kinnischtzke borrowed $150,000 from the Bank to construct a condominium project consisting of 22 condominium units in eight separate buildings. The promissory note evidencing the debt was secured by a real estate mortgage covering the land upon which the project was to be constructed. Fourteen of the 22 proposed units were constructed, sold, and released from the mortgage held by the Bank. Eight of the proposed units were never constructed, did not have foundations laid, and remain as vacant land.

The Kinnischtzkes defaulted and the Bank brought a foreclosure action. A foreclosure judgment was entered and a sheriff's sale was held. The Bank was the only bidder and a sheriff's certificate of sale was issued and recorded. After the redemption period expired, a sheriff's deed was issued to the Bank on February 8, 1984. The Bank did not record the sheriff's deed because of unpaid real estate taxes. The Bank was unable to find a buyer for the property. The land reverted to the county on October 1, 1985, upon expiration of the redemption period for nonpayment of the 1980 real estate taxes, and was subsequently deeded to the City of Bismarck.

The Association sued the Bank to recover unpaid condominium assessments for common expenses for the eight unconstructed units for the period from May 1984, through February 1986. The assessments sought were based on 100% of the assessment for constructed units.

The parties filed cross-motions for summary judgment. The trial court granted the Association's motion and judgment was entered in its favor for the assessments sought,[1] interest, costs, and disbursements.

The Bank argues on appeal that the North Dakota Condominium Law neither permits assessments on unconstructed units nor provides personal liability for such assessments; that amendments to the condominium declaration are invalid; and that if it is liable for assessments at all, it should be liable for no more than 25% of the assessments under the original condominium declaration.

■ Section 47–04.1–01(1), N.D.C.C., defines a condominium as "an estate in real property consisting of an undivided interest or interests in common in a portion of a parcel of real property together with a separate interest or interests in space in a structure, on such real property." As to assessments for common expenses, § 47–04.1–11, N.D.C.C., provides:

"*47–04.1–11. Liens against units for common expenses—Removal from lien—Effect of part payment.*—A reasonable assessment for common expenses made by the administrative body upon any condominium and made in accordance with the recorded declaration and bylaws shall be a debt of the owner thereof at the time the assessment is made. The amount of any such assessment plus any other charges thereon, such as interest, costs, and penalties, as such may be provided for in the declarations and bylaws, shall be and become a lien upon the condominium assessed when the administrative body causes such assessment to be recorded in the office of the register of deeds for the county in which such condominium is located. The notice of assessment shall state the amount of such assessment and other charges and the name of the record owner thereof. Such notice shall be signed by an authorized representative of the administrative body or as otherwise provided in the declarations and bylaws. Upon payment of said assessment and charges in connection with which such notice has been so recorded, or other satisfaction thereof, the administrative body shall cause a notice to be recorded stating the satisfaction and the release of the lien thereof."

Nothing in these statutes prohibits assessments on unconstructed units for common expenses or prohibits personal liability of owners for such assessments by agreement. Therefore parties may, by agreement, provide for assessments and personal liability. Both acts are authorized in the condominium declaration.

■ The Bank, which did not record its sheriff's deed to the property, argues that it never became the "record owner" as contemplated by § 47–04.1–11, N.D.C.C., or the condominium declaration and therefore is not liable for the assessments. The argument is wholly unconvincing. The Bank's failure to record the sheriff's deed does not vitiate its record ownership evidenced by the recording of the sheriff's certificate of sale.

■ The trial court determined that because the Bank voluntarily purchased the property at public sale, it was bound as an owner by the condominium declaration provisions for assessment of common expenses on unimproved lots, regardless of knowledge as a mortgage holder at the time it loaned the money. The court ordered the Bank to pay the assessments sought by the Association, which were based on 100% of the assessments for constructed units. In our view, the Bank's purchase of the property was not "voluntary." Voluntariness implies choices [*Jen-*

---

1. The Association conceded in its brief that Burleigh County acquired title to the property on October 1, 1985, "and hence the judgment of the District Court herein should be modified to reflect this error."

kins v. Kaplan, 53 N.J.Super. 582, 148 A.2d 33 (1959) ] and reasonable alternatives [Wilson v. Voss, 361 So.2d 312 (La.App. 1978) ]. "An act of *necessity* is not a *voluntary* act." *Gulf Production Co. v. Continental Oil Co.*, 139 Tex. 183, 132 S.W.2d 553, 576 (1939). The mortgage was issued in accordance with the Short–Term Mortgage Redemption Act, Ch. 32–19.1, N.D.C.C. Upon default, the Bank's only remedy, if any, was through foreclosure. *Mischel v. Austin*, 374 N.W.2d 599, 600 (N.D.1985). When no one else bid on the property, the Bank purchased it to minimize its loss. We conclude that the trial court erred in determining that the Bank's purchase was voluntary, subjecting it to liability for the assessments.

▮ Sections 47–04.1–01(1) and 47–04.1–11, N.D.C.C., do not provide for assessments on unconstructed units. We have already determined, however, that parties may, by agreement, provide for such assessments. The Bank's liability, if any, will turn on its agreement or knowledge and acquiescence that unconstructed units would be assessed, rather than on the voluntariness or involuntariness of its purchase of the property upon foreclosure. Whether the Bank is liable for assessments on unconstructed units depends upon whether or not it agreed, when it took the mortgage, that unconstructed units would be subject to assessment or knew, when it took the mortgage, that unconstructed units would be subject to assessment and acquiesced in such assessment, which are questions of fact precluding summary judgment.

If the trial court determines that the Bank, at the time it took the mortgage, agreed to assessment of unconstructed units, or knew of and acquiesced in such assessment, then a question arises as to

the meaning of Article VI of the condominium declaration, which provides for assessment of unconstructed units: [2]

"*Section 7.* Both annual and special assessments must be fixed at a uniform rate for all Lots, except lots owned by Class B membership may be assessed at 25 percent of the maximum annual assessment until such time the building foundation is constructed. The assessment may be collected monthly, or quarterly or on an annual basis."

The Bank argues that, because no foundations were constructed for the unconstructed units acquired by the Bank, Art. VI, § 7 of the original condominium declaration limits its liability to a maximum assessment of 25% of that for constructed units. The Association argues: (1) that the section is limited to Class B owners,[3] and there were no Class B lots when the Bank acquired ownership because "only Dean and Deanna Kinnischtzke, as the declarants of the project, could be the owner of any lot deemed Class B" as defined in the declaration; and (2) the section provides that lots owned by Class B membership "may" be assessed at 25%, but authorizes assessment at 100%. The trial court did not construe the provision.

A sheriff's deed "vest[s] in the grantee all the right, title, and interest of the mortgagor in and to the property sold, at the time the mortgage was executed, or subsequently acquired by him." Section 32–19–09, N.D.C.C.; *State v. Amerada Petroleum Corp.*, 71 N.W.2d 675 (N.D.1955); *Knowlton v. Coye*, 76 N.D. 478, 37 N.W.2d 343 (1949); *North Dakota Horse & Cattle Co. v. Serumgard*, 17 N.D. 466, 117 N.W. 453 (1908). Thus, the Bank succeeded to the Kinnischtzkes' rights as Class B owners.

---

**2.** An amended condominium declaration was recorded on February 7, 1984, that specifically provided for assessment of unconstructed units at the same rate as constructed units. The Bank contends that the amendment is invalid. The Association contends that issue is moot because the original declaration authorizes 100% assessment on unconstructed units. An affidavit filed in support of the Association's motion refers only to the original declaration.

We deem it unnecessary to address the validity of the amendment, which was not determined by the trial court.

**3.** Class B owners are defined in the condominium declaration as "the Declarant," which, in turn, is defined as "Dean Kinnischtzke and Deanna B. Kinnischtzke, their successors and assigns."

Owners of constructed units, unlike owners of unconstructed units, receive tangible benefits from assessments for common expenses involving such services as painting and maintenance, snow removal, and mowing, as well as insurance. The disparity in benefits lends support to the Bank's contention that the declaration limits its liability to a maximum assessment of 25% of that imposed for constructed units. We are unable to conclude, however, that Art. VI, § 7, of the condominium declaration so limits the Bank's liability as a matter of law. The provision is ambiguous because good arguments can be made in support of both parties' contentions with regard to its meaning. *See, e.g., Heitkamp v. Milbank Mut. Ins. Co.*, 383 N.W.2d 834 (N.D.1986). We therefore reverse the judgment and remand for determination of the unresolved factual question of the "ambiguously expressed intentions" [*Bohn v. Johnson*, 371 N.W.2d 781, 788 (N.D.1985)] in Art. VI, § 7, of the condominium declaration.

Reversed and remanded for further proceedings.

VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

ERICKSTAD, C.J., disqualified himself following oral argument.