Virginia LIVINGOOD, Plaintiff and Appellant,

v.

Henry C. MEECE, Jr., personally and as Superintendent of the Grafton State School; John Graham, Director of the North Dakota Department of Human Services; Richard Rayl, Director of Institutions, State of North Dakota, Defendants and Appellees.

Civ. No. 910033.

Supreme Court of North Dakota.

Nov. 12, 1991.

---

Neil W. Fleming (argued), of Fleming, DuBois & Trenbeath, Cavalier, for plaintiff and appellant.

Gary R. Thune (argued), of Pearce & Durick, Bismarck, for defendant and appellee Henry C. Meece, Jr., individually.

Sidney J. Hertz Fiergola (argued), Asst. Atty. Gen., Attorney General's Office, Bismarck, for defendants and appellees Henry C. Meece, Jr., Superintendent of Grafton State School; John Graham, Director of the

Dept. of Human Services; and Richard Rayl, Director of Institutions.

LEVINE, Justice.

Virginia Livingood appeals from a district court order dismissing her civil rights, breach of contract, and tort claims against Henry C. Meece, Jr., personally and as superintendent of the Grafton State School; John Graham, director of the Department of Human Services; and Richard Rayl, director of Institutions. We affirm in part and reverse in part.

Livingood was employed as a "Unit Director" at the Grafton State School, now known as the State Developmental Center. On January 6, 1986, her position was changed from a "Unit Director" to an "Administrative Resident Living Supervisor III" and her salary was reduced from $2,148 per month to $1,856 per month. She retired in 1989.

In June 1990, Livingood brought this action against the defendants seeking to recover damages for violations of her constitutional rights and breach of contract based upon her alleged demotion without notice or opportunity to appeal. She alleged that: (1) the defendants violated internal and state policies depriving her of property without due process in contravention of the fifth and fourteenth amendments to the United States Constitution and "corresponding state" constitutional provisions; (2) the defendants reduced her salary depriving her of property without due process in violation of the fifth and fourteenth amendments and corresponding state constitutional provisions; (3) the defendants demoted her without first providing notice and an opportunity for a hearing violating provisions of the Grafton State School Policy Manual and state personnel policies and constituting a breach of her employment agreement; (4) the defendants reduced her salary violating the provisions of the Grafton State School Policy Manual and amounting to a breach of her employment contract; and (5) Meece "intentionally instigated the breach of contract."

Livingood sought $30,000 for lost income and retirement benefits for the breach of contract claim; $30,000 for lost income and retirement benefits for the intentional interference with contractual relations claim; $50,000 in compensatory damages for violation of her civil rights; and injunctive relief requiring the state to "adjust [her] retirement benefits to correspond with her salary contributions prior to demotion" and to "retrospectively reinstate [her] salary and provide her with backpay."

The defendants, in their official capacities, subsequently moved for dismissal of the complaint pursuant to NDRCivP 12(b) for lack of jurisdiction and failure to state a claim upon which relief can be granted on the grounds that the suit was barred by sovereign immunity and by Livingood's failure to comply with NDCC §§ 32–12–02 and 32–12–03. Meece, in his personal capacity, also moved for dismissal under Rule 12(b) alleging failure to state a claim upon which relief can be granted. Meece asserted that Livingood was not "demoted," but was "transferred," and that by accepting the transfer she had waived any rights under the alleged employment contract. Meece contended the "transfer" was necessitated "by a reduction in the population of the State School as required by federal court order in the ARC lawsuit." Meece also asserted that he was entitled to either absolute or qualified immunity.

The trial court granted the motions for dismissal. Although the court refused to apply the doctrine of sovereign immunity to bar the suit, the court determined, among other things, that Livingood voluntarily relinquished her job classification by accepting less pay in her new position, thereby precluding any claim of violation of civil rights or breach of contract. The court also determined that Livingood's signing of an "Employee Change of Status" form indicated acquiescence that "belies her claim of outrageous conduct attributed to Meece." This appeal followed.

Livingood asserts that the trial court erred in apparently converting the defendants' Rule 12(b) motions for dismissal into motions for summary judgment under NDRCivP 56, and that, in any event, genuine issues of material fact exist which pre-

cluded the entry of summary judgment in this case. Although it is not entirely clear whether the trial court intended to treat the motions as motions for summary judgment, we disagree with Livingood that the trial court could not do so.

■ If, on a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b), matters outside the pleadings are presented to and not excluded by the court, the motion should be treated as one for summary judgment and disposed of as provided in Rule 56. *Union State Bank v. Woell*, 434 N.W.2d 712, 715 (N.D.1989). Of course, when this occurs, each party must be allowed a reasonable opportunity to present material pertinent to the motion under Rule 56. *Eck v. City of Bismarck*, 283 N.W.2d 193, 196–197 (N.D.1979).

■ In this case, Meece in his personal capacity submitted various materials outside the pleadings along with his Rule 12(b) motion for dismissal. These materials included selected portions of the Grafton State School Personnel Policies and North Dakota Personnel Policies as well as a form, signed by Livingood, entitled "Employee Change of Status." The form indicates a change of position from "Unit Director" with a monthly salary rate of $2,148 handwritten underneath, to "RLS III, Administrative" with a monthly salary rate of $1,856 handwritten underneath. Under "Remarks concerning change" is typed "Change of job from Unit Director of Pleasant View which is closing down to administrative assistant for Education Department to same things as RLS III Administrative does on Units. At the discretion of the Superintendent and those administrators assisting him in the transfer process, this employee will be transferred to the Education Department." "Top of the range pay grade 19" is also handwritten on the document.

The trial court, relying on matters outside the pleadings, dismissed the action on the basis that the Employee Change of Status form showed Livingood had voluntarily relinquished her job classification and accepted less pay. Livingood then moved for reconsideration and submitted her affidavit stating that at the time she signed the document, "the salary information ... was not filled in," nor were the typewritten and handwritten comments. Livingood also submitted an affidavit of her supervisor and an internal office memo which supported her assertions. She also submitted portions of the Grafton State School Personnel Policies and a "Report to Director of Institutions Regarding Investigation at Grafton and San Haven." In the order affirming its previous dismissal, the trial court indicated that it had "reconsidered its decision" in light of the additional materials. Based on this record, we believe that Livingood was given a reasonable opportunity to present material pertinent to the motion under Rule 56.

■ We agree with Livingood, however, that the trial court erred in ruling as a matter of law that she voluntarily relinquished her job position and accepted lower pay, thereby requiring dismissal of her claims. Summary judgment is proper when, after viewing the evidence in the light most favorable to the opposing party and giving that party the benefit of all favorable reasonable inferences, there is no genuine dispute as to either the material facts or the inferences to be drawn from undisputed facts. *Volk v. Wisconsin Mortgage Assurance Co.*, 474 N.W.2d 40, 43 (N.D.1991). Livingood presented evidence showing that she was unaware when she signed the document that she would suffer a reduction in pay. This created a reasonable inference that she did not voluntarily relinquish her position and accept lower pay. In damage suits, issues of voluntariness and acquiescence generally are treated as questions of fact. *See Krein v. Marian Manor Nursing Home*, 415 N.W.2d 793, 794 (N.D.1987); *Century Park Condo. v. Norwest Bank*, 420 N.W.2d 349, 352 (N.D.1988). Summary judgment disposition of this issue was therefore improper.

■ The appellees assert that, at the very least, judgment in favor of some of the defendants on some of the claims was proper as a matter of law even under Rule

12(b) standards. An appellee is entitled on appeal to attempt to save the judgment by urging any ground asserted in the trial court. *Tkach v. American Sportsman, Inc.*, 316 N.W.2d 785, 787 (N.D.1982).

A complaint should not be dismissed under Rule 12(b)(5) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. *United Plainsmen v. N.D. State Water Cons.*, 247 N.W.2d 457, 459 (N.D.1976). The complaint must be construed in the light most favorable to the plaintiff, and the well-pleaded allegations in the complaint are taken as true. *Johnson & Maxwell, Ltd. v. Lind*, 288 N.W.2d 763, 765 (N.D.1980). The motion should be granted only if it is disclosed with certainty the impossibility of proving a claim for which relief can be granted. *Williams v. State*, 405 N.W.2d 615 (N.D.1987).

## BREACH OF CONTRACT CLAIM

This court has held that no suit may be maintained against the state unless the Legislature has authorized it. *E.g., Senger v. Hulstrand Const., Inc.*, 320 N.W.2d 507, 508 (N.D.1982). The Legislature has authorized suits against the state in cases "arising upon contract." NDCC § 32–12–02; *Kristensen v. Strinden*, 343 N.W.2d 67, 74 (N.D.1983). When this action was commenced, NDCC § 32–12–03 provided:

> "*32–12–03. Claim presented and refused before action brought.*—No action upon a claim arising upon contract for the recovery of money only can be maintained against the state until the claim has been presented to the office of management and budget for allowance and allowance thereof refused. The neglect or refusal of the office to act on such claim for a period of ten days after its presentation for allowance shall be deemed a refusal to allow the claim." [1]

Livingood's complaint does not allege that the requirements of this statute have been satisfied and it is undisputed that no written claim was presented to the Office of Management and Budget [OMB]. Livingood asserted to the trial court, however, that the defendants were well aware of her claim because she had sought relief through administrative appeals which had all been rejected. She asserted that requiring submission of the claim to OMB would be a "futile" act. She also asserted that, in any event, the claim was presented through her attorney's informal discussions with Richard Rayl, who is also director of OMB. The trial court "assumed the claim has been submitted, perhaps in a very informal manner" and refused to dismiss the contract claim on this basis.

We believe dismissal of the contract claim was proper in this case because Livingood failed to present a claim to OMB as required by § 32–12–03. In *Goodhope v. State*, 50 S.D. 643, 211 N.W. 451 (1926), the South Dakota Supreme Court rejected a similar argument that requiring a claim to be submitted to the state auditor prior to commencing an action against the state would be an idle act:

> "There is no allegation in the complaint that the claim was presented to the state auditor, nor that such officer has refused to allow it. Plaintiff urges that the law does not require the performance of idle acts, and that it would be an idle act to present the claim to the state auditor, after its rejection by the board of charities and corrections.
>
> "It was for the Legislature to specify the conditions under which an action might be brought against the state. It has specified, as a condition precedent to the bringing of an action under said section 2109, that the allowance of the claim must have been refused by the state auditor. *Lyman County v. State*, 9 S.D. 413, 69 N.W. 601 [1896]. Under such circumstances, it is not for this court to say that the presentation of the claim to the state auditor would have been an idle act. The condition precedent specified by the Legislature must have been com-

1. In 1991 the Legislature amended section 32–12–03 by omitting reference to the "office of management and budget" and replacing it with "department, institution, agency, board, or commission to which claim relates." 1991 N.D.Sess. Laws Ch. 359 § 1.

plied with in order to authorize the bringing of this action in this court under said section 2109." *Goodhope, supra,* 211 N.W. at 452.

A majority of this court has also held that actual notice of a claim does not satisfy a statutory requirement for presenting a written notice or claim to a governmental body. *See Besette v. Enderlin Sch. Dist. No. 22,* 288 N.W.2d 67, 71 (N.D.1980); Annot., *Actual notice of knowledge by governmental body or officer of injury or incident resulting in injury as constituting required claim or notice of claim for injury—modern status,* 7 A.L.R.4th 1063 (1981). Although § 32–12–03 does not expressly state that a claim be in written form, it does require that a claim be "presented." There are sound reasons for construing the requirement of presentment to mean a claim must be in writing. In *Escher v. Carroll County,* 146 Iowa 738, 125 N.W. 810 (1910), the court construed a similar statute that said "no action shall be brought against any county on an unliquidated demand, until the same has been presented to such board and payment demanded and refused or neglected." The court reasoned:

"We are therefore brought to the question whether an unliquidated demand must be in writing when its payment is demanded. We are of the opinion that such is the requirement of the statute. It says that no action shall be brought until the demand has been 'presented' to the board, and payment demanded and refused. The word 'present' is generally used when formal action is indicated.... The purpose of the statute is to give the board of supervisors an opportunity for investigation and for determining whether the claim shall be paid or litigated.... In *Dale v. Webster County,* 76 Iowa 370, 41 N.W. 1 [1888], we held that, under the statute, the board should be informed of the amount of the claim and the grounds on which it is made with sufficient clearness to enable it to investigate the facts and reach an intelligent conclusion. A written demand or claim can always be made with but little trouble, and it will avoid the conflict which must necessarily arise over an oral one. Moreover, if the board has no formal written demand before it, there is an opportunity for misunderstanding and oversight which might involve all parties in endless and needless trouble.... This construction of the statute will protect all parties and prejudice no one." *Escher, supra,* 125 N.W. at 812.

We conclude that, because Livingood failed to present a written claim to OMB as required by § 32–12–03, the trial court did not err in dismissing the breach of contract claim.[2]

## STATE CONSTITUTIONAL CLAIMS—OFFICIAL CAPACITY DEFENDANTS

■ Meece, Graham, and Rayl have been sued in their official capacities as state officials. Meece has also been sued in his personal capacity.

This court has held that suing state officials solely in their official capacities, as opposed to suing them in their individual or personal capacities, is tantamount to suing the state itself. *Kristensen, supra,* 343 N.W.2d at 72; *Spielman v. State,* 91 N.W.2d 627, 629 (N.D.1958). Although Justice Meschke and the author of this opinion would hold otherwise, a majority of this court has consistently refused to abrogate the doctrine of sovereign immunity as a bar to an action against the state. *See Leadbetter v. Rose,* 467 N.W.2d 431 (N.D.1991); *Schloesser v. Larson,* 458 N.W.2d 257 (N.D.1990); *Dickinson Public School Dist. v. Sanstead,* 425 N.W.2d 906 (N.D.1988); *Kristensen, supra; Senger v.*

---

**2.** We need not determine whether the intentional interference with contract claim against Meece in his official capacity is an action "arising upon contract" for which the state has waived its sovereign immunity under NDCC § 32–12–02. *See Schloesser v. Larson,* 458 N.W.2d 257, 259 (N.D.1990); *Kristensen v. Strin-* *den,* 343 N.W.2d 67, 74–75 (N.D.1983). Even if it were an action "arising upon contract," the trial court's dismissal of the claim against Meece in his official capacity was proper because of Livingood's failure to comply with NDCC 32–12–03.

*Hulstrand Const., Inc.,* 320 N.W.2d 507 (N.D.1982). In addition, this court has specifically applied sovereign immunity as a bar to a direct cause of action against the state based on the alleged violation of state constitutional provisions, assuming that such a cause of action exists. *See Kristensen, supra,* 343 N.W.2d at 70 and 78 n. 13. Based on these decisions, we conclude that the trial court did not err in dismissing the action for alleged violation of state constitutional provisions against the defendants in their official capacities.

## FEDERAL CONSTITUTIONAL CLAIMS—OFFICIAL CAPACITY DEFENDANTS

Although Livingood does not refer to the statute in her complaint, the defendants characterize her claims for violation of federal constitutional provisions as a 42 U.S.C. § 1983 civil rights action. Livingood does not argue that she is asserting a direct cause of action under the federal constitution,[3] and we therefore accept the defendants' characterization of her claim as a § 1983 action.

■ Section 1983 authorizes damage suits against "persons" for deprivations of federal rights under color of state law.[4] It is now settled that neither a state, an entity with eleventh amendment immunity, nor a state official sued in his or her official capacity, is a "person" within the meaning of § 1983 and neither is subject to suit under the statute in federal court or state court. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71–73, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); *see also Howlett v. Rose,* 496 U.S. 356, ——, 110 S.Ct. 2430, 2437, 110 L.Ed.2d 332 (1990); *Kristensen, supra.* The Supreme Court in *Will, supra,* 109 S.Ct. at 2311 n. 10, however, specifically noted that "a State official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" [quoting *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985) ]. Livingood asserts that some of the relief she seeks, *i.e.,* backpay and lost retirement benefits, constitutes injunctive, prospective relief which she may obtain from the state in a § 1983 action.

■ In general, suits for monetary awards out of state funds are deemed suits against the state and are barred by the eleventh amendment while suits against a state for prospective injunctive relief are not deemed suits against the state and are therefore not barred.[5] *Edelman v. Jor-*

---

3. In *Kristensen, supra,* 343 N.W.2d at 78 n. 13, we noted that "'[t]he availability of a *Bivens*-type Fourteenth Amendment remedy against nonfederal defendants is subject to serious question.'" [quoting *Morris v. Washington Metropolitan Area Transit,* 702 F.2d 1037, 1042 n. 10 (D.C.Cir.1983) referring to *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) ]. The Supreme Court has yet to decide this issue. *See* Nahmod, *Civil Rights and Civil Liberties Litigation* § 6.16 (1986 and 1990 Supp.).

4. 42 U.S.C. § 1983 provides:

"*§ 1983. Civil action for deprivation of rights*
"Every person who, under color of any statute, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for re-

dress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

5. We recognize that the eleventh amendment is inapplicable in actions brought in a state court. *Maine v. Thiboutot,* 448 U.S. 1, 9 n. 7, 100 S.Ct. 2502, 2506 n. 7, 65 L.Ed.2d 555 (1980). Although we noted in *Kristensen, supra,* 343 N.W.2d at 72 n. 4, that this court, in interpreting the applicability of sovereign immunity in state court actions, had not engaged in making the prospective-retrospective relief distinction found in eleventh amendment jurisprudence, we believe we are required to resort to federal court interpretations of the scope of relief available from the state under eleventh amendment principles in § 1983 actions. In *Felder v. Casey,* 487 U.S. 131, 139–40, 108 S.Ct. 2302, 2307, 101 L.Ed.2d 123 (1988), the Supreme Court held that a state law which conflicts with the remedial objectives of § 1983 and which "will frequently and predictably produce different outcomes in § 1983 litigation based solely on whether the

*dan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). In *Edelman,* the district court awarded compensation to welfare applicants as "equitable restitution" for slow processing of their applications that occurred prior to the district court's order enjoining the practice. The Supreme Court held that in "a § 1983 action ... a federal court's remedial power ... may not include a retroactive award which requires the payment of funds from the state treasury," and that the district court's award of "equitable restitution" was "in practical effect indistinguishable" from a retroactive award of damages against the state and was, hence, barred by the eleventh amendment. *Edelman, supra,* 415 U.S. at 668, 677, 94 S.Ct. at 1358, 1362. The Court found no eleventh amendment bar to the part of the district court's order that prospectively enjoined the officials from failing to process applications within the time limits prescribed by federal regulations.

■ Livingood's request for backpay, although styled as injunctive relief, would plainly constitute a monetary award payable out of the state treasury. It is clearly retroactive in nature. We agree with the holding of the vast majority of courts that "[a] backpay award against a state, whether viewed as damages for illegally terminated employment or as an aspect of equitable relief is retroactive in nature and is therefore barred by the eleventh amendment." *United Carolina Bank v. Board of Regents,* 665 F.2d 553, 561 (5th Cir. 1982). *See also Lenea v. Lane,* 882 F.2d 1171, 1178 (7th Cir.1989); *Reed v. Bullock,* 872 F.2d 671, 672 (5th Cir.1989); *Figueroa-Rodriguez v. Aquino,* 863 F.2d 1037, 1044 (1st Cir.1988); *Fernandez v. Chardon,* 681 F.2d 42, 60 (1st Cir.1982), *aff'd,* 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983); *Nevels v. Hanlon,* 656 F.2d 372, 377–378 (8th Cir.1981); *Corum v. University of North Carolina,* 97 N.C.App. 527, 389 S.E.2d 596, 599 (1990).

claim is asserted in state or federal court ... is pre-empted." Therefore, we apply eleventh amendment principles in determining whether Livingood's § 1983 action against the defendants in their official capacities is barred. *See Truesdale v. University of North Carolina,* 91

■ We reach the same conclusion with regard to Livingood's request for lost retirement benefits. Federal courts have distinguished situations in which relief is sought to stop an ongoing violation of the constitution, from situations where the violation has occurred and does not continue. The eleventh amendment bars relief in the latter situation, but not in the former. *See Papasan v. Allain,* 478 U.S. 265, 277–278, 106 S.Ct. 2932, 2939–2940, 92 L.Ed.2d 209 (1986). In this case, the constitutional violation, if any, is not an ongoing violation, but occurred when Livingood was allegedly demoted in 1986 without minimal due process requirements. Even though granting Livingood lost retirement benefits may require the defendants to make payments in the future, "the relief would still be remedying a past violation because 'It is in substance the award, as continuing income rather than as a lump sum [up front], of an accrued monetary liability.'" *Mello v. Woodhouse,* 755 F.Supp. 923, 928 (D.Nev. 1991) [quoting *Papasan, supra,* 478 U.S. at 281, 106 S.Ct. at 2942]. Livingood's request for lost retirement benefits from the state or its officials is barred by the eleventh amendment. *See Mello, supra; Reiger v. Kansas Public Emp. Ret. System,* 755 F.Supp. 360, 361 (D.Kan.1990).

We therefore conclude that the trial court did not err in dismissing the § 1983 action against the defendants in their official capacities.

## FEDERAL CONSTITUTIONAL CLAIMS—MEECE IN HIS PERSONAL CAPACITY

■ State officials sued for damages in their personal or individual capacities are "persons" within the meaning of § 1983. *Hafer v. Melo,* —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). However, they may assert a qualified immunity from liability. *Scheuer v. Rhodes,* 416 U.S. 232,

N.C.App. 186, 371 S.E.2d 503, 508 (1988), *cert. denied,* 493 U.S. 808, 110 S.Ct. 50, 107 L.Ed.2d 19 (1989); *but see Stokes v. University of Tenn. at Martin,* 737 S.W.2d 545, 546 (Tenn.Ct.App. 1987), *cert. denied,* 485 U.S. 935, 108 S.Ct. 1110, 99 L.Ed.2d 271 (1988).

247, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1974). Meece asserts that he is entitled to qualified immunity under the circumstances of this case.

■■■■ The doctrine of qualified immunity recognizes the need of government officials to be free from harassing lawsuits and apprehension of personal liability when they exercise authority and discretion while performing their jobs in the public interest. *Butz v. Economu,* 438 U.S. 478, 506–507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978). Determining whether the defense is applicable requires "an objective inquiry into the legal reasonableness of the official action." *Anderson v. Creighton,* 483 U.S. 635, 645, 107 S.Ct. 3034, 3042, 97 L.Ed.2d 523 (1987). In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See also Lefor Ed. Ass'n v. Lefor Public School Dist. No. 27,* 285 N.W.2d 524 (N.D.1979). The *Harlow* Court further explained:

"Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed. If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors." *Harlow, supra,* 457 U.S. at 818–819, 102 S.Ct. at 2738 [Footnotes omitted].

■■■■ A constitutional right is "clearly established" if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Creighton, supra,* 483 U.S. at 640, 107 S.Ct. at 3039. Although the applicability of the qualified immunity defense is ordinarily a question of law [*Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985)], under some circumstances, resolution of the issue may require that a factfinder determine the reasonableness of the official's actions. *See Morris v. Clifford,* 903 F.2d 574, 579 (8th Cir.1990), and cases cited therein.

■■■ In this case, the alleged constitutional violation by Meece involves deprivation of a property interest without due process. It is now firmly established that public employees who have legitimate expectations of continued government employment possess property interests of which they cannot be deprived without due process. *Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Rudnick v. City of Jamestown,* 463 N.W.2d 632, 638–639 (N.D.1990); *Berdahl v. N.D. State Personnel Bd.,* 447 N.W.2d 300, 304–305 (N.D.1989); *Hennum v. City of Medina,* 402 N.W.2d 327, 335 (N.D.1987); *Lee v. Walstad,* 368 N.W.2d 542, 546 (N.D.1985). In *Loudermill,* the Supreme Court held that the due process clause requires pretermination notice and an opportunity to re-

spond before an employee with a constitutionally protected property interest in continued employment may be terminated. The *Loudermill* rationale has been applied to less drastic personnel actions than terminations, such as demotions or transfers accompanied by a loss of pay. *E.g., Sanchez v. City of Santa Ana*, 915 F.2d 424, 429 (9th Cir.1990) *cert. denied,* — U.S. —, 112 S.Ct. 66, 116 L.Ed.2d 41 (1991); *Mangaroo v. Nelson*, 864 F.2d 1202, 1206 (5th Cir.1989); *Hatcher v. Board of Public Education and Orphanage*, 809 F.2d 1546, 1550 (11th Cir.1987); *Rudnick, supra.* The inquiry is twofold: whether there is a constitutionally protected property interest at stake; and, if so, whether minimum due process procedural requirements were met.

▮ Property interests may be created in a variety of ways. " '[P]roperty' interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, 'property' denotes a broad range of interests that are secured by 'existing rules or understandings.' " *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972) [quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)]. "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....'" *Loudermill, supra* [quoting *Roth, supra*]. Thus, property interests may be created by statutes, regulations, ordinances, or implied contracts. *See Loudermill, supra; Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Depending on the facts and circumstances, personnel policies contained in an employee handbook or manual may also create a property interest in continued employment entitling an employee to due process protections. *Adams County School Dist. No. 50 v. Dickey*, 791 P.2d 688, 695 (Colo.1990), and cases cited therein. In *Little v. Spaeth*, 394 N.W.2d

700, 704 (N.D.1986), this court implicitly recognized that the North Dakota Personnel Policies manual could possibly be the basis of a constitutionally protected property interest if properly promulgated under NDCC Ch. 28–32, or if "held out or voluntarily operated under" by a state official.

The parties in this case have not focused on the property interest issue. Meece asserted to the district court that Livingood, by signing the change of status form, voluntarily accepted her change of job status, thereby relinquishing any property interest she may have had in the Unit Director position. *See, e.g., Stone v. University of Maryland Medical System*, 855 F.2d 167, 173 (4th Cir.1988) [an employee who resigns of his own free will relinquishes his property interest voluntarily and thus cannot establish that the state "deprived" him of it within the meaning of the due process clause]. The district court accepted this argument, which essentially formed the basis for dismissal of all of Livingood's claims. As we have already ruled, however, summary judgment disposition of the voluntariness issue was improper and the trial court erred in dismissing Livingood's claims on this basis.

Meece alternatively asserted to the district court and to this court on appeal that, as a matter of law, Livingood was "transferred" rather than "demoted" under the Administrative Code and was therefore not entitled to notice and a hearing. Under NDAC § 59.5–03–03–02(2), a " '[d]emotion' includes an involuntary reduction for disciplinary reasons in the status of an employee from a position in one class to a position in a lower class resulting in a decrease in base salary." Under NDAC § 59.5–03–03–04, the "appointing authority, after giving the employee a written notice of the reason, may demote an employee for disciplinary reasons. Classified employees who have satisfactorily completed their probationary periods have the right to appeal a demotion." [6] Livingood asserted in her

**6.** North Dakota State Personnel Policies also provide:
"Section 3
"Demotion

" *8–3–1 An employee may be demoted for inefficiency, misconduct, or other cause. A demotion is an involuntary reduction for disciplinary reasons in the status of an employee

complaint, and Meece agrees, that her "demotion was not due to any misconduct on her part." Meece therefore asserts that because Livingood's "demotion" was not "for disciplinary reasons," she was not "demoted" within the meaning of the Administrative Code. In other words, because there were no "disciplinary reasons" for reducing her employee status and pay, Livingood was "transferred," and because there apparently are no requirements for notice, hearing, or appeal for a "transferred" employee under the Administrative Code,[7] she was deprived of no rights in this case.

Meece's argument is flawed in several respects. First, the definition of a "demotion" in the Administrative Code is prefaced by the word "includes," which ordinarily indicates an "incomplete list." *American Heritage Dictionary* at p. 651 (2d College Ed.1985). *See Knoff v. American Crystal Sugar Co.*, 380 N.W.2d 313, 316 (N.D.1986); *Lucke v. Lucke*, 300 N.W.2d 231, 234 (N.D.1980). Second, assuming for purposes of argument that Livingood has a constitutionally protected property interest in not having her position reduced and her salary decreased except for cause, the process constitutionally due Livingood prior to deprivation of that property interest is determined not by the procedures in the Administrative Code, but by the requirements of the due process clause. *Loudermill, supra*, 470 U.S. at 541, 105 S.Ct. at 1493. Moreover, if such a property interest exists, the fourteenth amendment will not permit a state official to "wrest a governmental benefit from an individual claimant through definitional gamesmanship." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 448 (2d Cir.

1980). *See also Hatcher v. Board of Public Educ. and Orphanage*, 809 F.2d 1546, 1551 (11th Cir.1987); *J.O.M. Corp. v. Dept. of Health of State of N.Y.*, 697 F.Supp. 720, 725 (S.D.N.Y.1988). The provisions of the Administrative Code are not necessarily determinative of Livingood's due process claim.

But Livingood also has not adequately identified the state source for her alleged constitutionally protected property interest. Her appellate brief does not address the subject. Her complaint refers to the "North Dakota State Personnel Policy" and the "Grafton State School Policy Manual." She also alleges in her complaint that "the course of conduct, representations by the defendants, and provisions of the Grafton State School Policy Manual created a legitimate expectation ... to continued employment as a Unit Director," but the record in these proceedings does not show what that conduct was or what those representations were. In a district court brief, she refers to "the Personnel Policy Manual." It is unclear whether she relies on any provisions of the Administrative Code.

■ Qualified immunity analysis "requires the court to consider the operation of the rule in the context of 'the circumstances with which [the official] was confronted.'" *Giacalone v. Abrams*, 850 F.2d 79, 85 (2d Cir.1988) [quoting *Creighton, supra*, 483 U.S. at 640, 107 S.Ct. at 3039]. At this point in the proceedings, there has simply been an inadequate development by the parties of the facts as well as the law for this court to attempt to make an informed ruling on either Livingood's alleged due process violation or Meece's qualified immunity defense. Accordingly, we re-

from a position in one class to a position in a lower class resulting in a decrease in base salary. Prior to the demotion of a classified employee who has successfully completed the probationary period, the employer shall give a written notice of the reasons for such action, an explanation of the charges and the supporting evidence, and provide an opportunity for the employee to respond. A permanent employee shall have the right to appeal.

\* \* \* \* \* \*

"9–2–4 Demotion. The appointing authority, after giving the employee a written notice of

the reasons and an opportunity to respond, may demote an employee for disciplinary reasons. Classified employees who have satisfactorily completed their probationary periods have the right to appeal a demotion."

**7.** Chapter 59.5–03 of the North Dakota Administrative Code does not define a "transfer."

mand Livingood's § 1983 claim against Meece in his personal capacity to the trial court so the parties can develop an adequate record of the facts as well as the law applicable to those facts for resolution of the qualified immunity claim. *Cf. Federal Land Bank of St. Paul v. Halverson,* 392 N.W.2d 77, 86 (N.D.1986).

## STATE LAW CLAIMS—MEECE IN HIS PERSONAL CAPACITY

Livingood's complaint attempts to state a claim against Meece under "corresponding state provisions" to the fifth and fourteenth amendments to the federal constitution. This argument was not further developed or even addressed before the trial court or this court. Livingood has not even cited to the applicable state constitutional provisions she relies on. Assuming that a direct cause of action exists for violation of a state constitutional provision [*see Kristensen, supra*], we conclude that Livingood has abandoned this claim. *See State v. Patzer,* 382 N.W.2d 631, 639 n. 5 (N.D.), *cert. denied,* 479 U.S. 825, 107 S.Ct. 99, 93 L.Ed.2d 50 (1986). Accordingly, the trial court did not err in dismissing this claim.

Livingood has also alleged a claim against Meece for tortious or intentional interference with contractual relations.[8] Section 32–12.1–15(2), NDCC, provides:

> "2. No employee of the state may be held liable in the employee's personal capacity for actions or omissions occurring within the scope of the employee's employment unless such actions or omissions constitute reckless or grossly negligent conduct, malfeasance, or willful or wanton misconduct."

The trial court determined that this statute would not afford Meece immunity from the tortious interference with contractual relations claim "[i]f Meece is proven to have acted as alleged," but dismissed the claim on other grounds. Likewise, at this stage of the proceeding, we are unable to say as a matter of law that Livingood's intentional interference with contractual relations action against Meece is barred by

the statute. We have recognized that "the intent element in tortious interference with contractual relations requires greater culpability than is required under basic tort principles." *Hennum v. City of Medina,* 402 N.W.2d 327, 338 (N.D.1987). Thus, if Meece is found to have committed the tort, the facts supporting that finding might also support a finding of "reckless or grossly negligent conduct, malfeasance, or willful or wanton misconduct" for which Meece would not be immune. *See Hennum, supra,* 402 N.W.2d at 339. *See also Binstock v. Fort Yates Public School Dist.,* 463 N.W.2d 837, 840–842 (N.D.1990). We conclude that the trial court erred in dismissing this claim.

Accordingly, we reverse the trial court's dismissal of the § 1983 claim and the tortious interference with contractual relations claim against Meece in his personal capacity and remand for further proceedings. Otherwise, the order of dismissal is affirmed.

ERICKSTAD, C.J., and GIERKE and VANDE WALLE, JJ., concur.

MESCHKE, J., concurs in the result.

---

**8.** Livingood conceded that she has no breach of contract action against Meece, in his personal capacity, because "he is not a party to the contract."