STATE ex rel. E. M. POPE v. GERMANIA BANK OF ST. PAUL.[1]

November 27, 1908.

Nos. 15,799—(117).

**Diligence Required of Receivers.**

Receivers of insolvent estates are not guarantors against loss, but they are required to exercise that degree of diligence in the administration of the trust which is exercised by a man of ordinary prudence with reference to his own business affairs.

**Receiver May Rely on Advice of Counsel.**

Where the proper administration of the estate makes it necessary or expedient to take legal advice, and competent counsel is employed whose advice is followed in good faith, the receiver is not liable for consequent losses.

**Same—Liability for Loss.**

The evidence does not sustain the charge that appellant, while acting as receiver of the insolvent bank, was guilty of such negligence as to make him responsible for losses resulting from the failure of his attorney, acting upon a mistake of law, to bring suits against certain stockholders before the expiration of the statute of limitations.

After the decision upon the former appeal (103 Minn. 129) the question whether the former receiver of the insolvent Germania Bank of St. Paul was liable for negligence in his office was tried in the district court for Ramsey county before Olin B. Lewis, J., who found that by reason of the neglect of the former receiver to bring suits against certain stockholders to enforce their liability under the assessment made on September 17, 1903, the estate lost $31,012.50 and directed that the account of the receiver be surcharged by that amount. From an order denying a new trial and from the order surcharging his account, Gustav Willius appealed. Reversed.

*Edward P. Sanborn,* for appellant.

*B. H. Schriber, A. E. Horn,* and *W. W. Cutler,* for respondents.

LEWIS, J.

Appeal from an order surcharging appellant's account with the sum of $31,012.50 on account of his failure to bring suit against certain stockholders before the statute of limitations expired.

[1] Reported in 118 N. W. 683.

On July 26, 1899, appellant was appointed receiver of the Germania Bank of St. Paul, insolvent, under the provisions of chapter 145, p 298, Laws 1895. On September 17, 1903, an assessment of one hundred cents on the dollar was made upon all the stock of the bank under the provisions of chapter 272, p. 315, Laws 1899. Upon appeal from that order, it was decided that the stockholders of the reorganized bank were liable to the amount of their stock. Willius v. Mann, 91 Minn. 494, 98 N. W. 341, 867. The assessment order was modified and finally entered on May 27, 1904. The seventh report of the receiver was filed May 29, 1907, and he filed a petition praying that his accounts as rendered be allowed. Certain of the creditors filed objections to the allowance of the account, and demanded that the receiver be charged with the amount of about $200,000 stock liability. The creditors also petitioned for the appointment of a new receiver. All these petitions came on for hearing June 22, 1907. After the evidence had been taken, and on July 10, 1907, Willius tendered his resignation. July 16, 1907, the trial court filed three orders in the premises: One, accepting the resignation of Mr. Willius as receiver; another, appointing John A. Lagerman receiver as his successor; and a third, adjusting and allowing the accounts of Mr. Willius, with those of his attorney, but providing that the order should not release him, or his bond, from any liability, if any existed, for any act or omission of his as receiver.

The objecting creditors appealed from the order allowing the receiver's account and the fees of his attorney. This court upheld the order, in so far as it adjusted and allowed the attorney's fees, but held that it was the duty of the trial court to determine in the same proceeding the question of the liability of the receiver upon the alleged ground of negligence. State v. Germania Bank of St. Paul, 103 Minn. 129, 114 N. W. 651. The trial court then proceeded to examine that question, and found that, by reason of the neglect of the receiver to bring suits against certain stockholders to enforce the stock liability prior to July 29, 1905, the estate lost $31,012.50, and directed that his account be surcharged with that amount, from which order Mr. Willius appealed.

The receiver denies any negligence on his part, and explains his delay in bringing actions against the stockholders upon the ground

that, from the inception of the receivership, the question of stock-holder's liability had been exceedingly complicated, involving several different actions at law, and that in respect thereto he had been entirely guided by the advice of his counsel; that it had been taken for granted that the statute of limitations began to run from the date of the assessment; and that until so decided on March 28, 1907, in Willius v. Albrecht, 100 Minn. 436, 111 N. W. 387, 112 N. W. 862, his attorney and himself had no reason for supposing that the statute commenced to run from the date of the receiver's appointment, July 26, 1899.

The conclusion of the trial court was based upon the following ground: It having been definitely determined May 27, 1904, as a result of prolonged litigation, that the stockholders were liable, it then became the duty of the receiver to proceed with all reasonable diligence to enforce the liability; that a delay of fourteen months was unnecessary; that the receiver failed to give any reasonable excuse, and the court traced the loss to the failure to bring the actions without reference to the statute of limitations.

As we understand it, court was of opinion that the receiver is not in position to plead the advice of counsel; that, having unreasonably and negligently put off for the period of fourteen months a duty which the statute and the order of the court required him to perform with diligence, he must take the consequences, even though he was acting in good faith and under the advice of counsel.

During the first five years of the receivership of Mr. Willius, his proceedings were fully disclosed in his annual reports, the creditors were informed of his movements, no objections were made to the policy pursued, and his conduct met with the approval of the court. The attorney considered it advisable to restrict the number of actions, and to effect settlements with stockholders when possible. At the hearing in June, 1907, the whole matter was gone into and in the order of July 16, 1907, the trial court, after reviewing the evidence, found that the receiver had acted in good faith, but reserved the question of his liability upon the ground that the evidence was not complete, and that a proper suit should be brought to determine that question. In the memorandum attached to that order the court reviewed the history of the receivership, called attention to the complicated condition of the assets and to the prolonged litigation required to deter-

mine the liability of the stockholders, and approved the conduct of the attorney, fixed the amount of his fees for general advice, and also for special services in the actions conducted against the stockholders. After the cause was remanded the matter came on for further hearing upon the same evidence, and the court adhered to its former conclusion that the receiver had always acted in good faith, and that he was not chargeable with any negligence prior to May 27, 1904.

The real question now before the court is whether there is any evidence reasonably tending to indicate such a change in the policy and method of administering the trust after May 27, 1904, as to justify the order appealed from. According to the record, the same confidential relation continued between the receiver and his attorney during the subsequent period. Mr. Willius sought advice from time to time with respect to the affairs of the estate, and did not assume to take any important step without consulting his attorney. Mr. Richardson had advised him that the correct policy to pursue in recovering from the stockholders was not to assault them in large numbers, but take them one by one, using as a basis the successful decision in the Ramsey estate. Although after May 27, 1904, the receiver exercised general supervision over the matter of collecting from the stockholders, yet he placed the entire matter of bringing such actions in the hands of his attorney. This particularly appears from the following letters:

Under date of September 29, 1904, he addressed the following communication to Mr. Richardson:

"Dear Sir:

"Some time ago I sent a third notice of assessment to quite a number of the new stockholders, whose liability is fixed, advising them that this would be my final notice; also calling their attention to the fact that the claim draws interest from October 17th, 1903. A few have paid in consequence thereof; some called and pleaded inability to pay, but the majority gave it no attention. It seems to be our duty to institute proceedings in these cases, at least against the responsible ones. Is this your advice, and do you wish me to send you the names. * * *                Yours truly,

"Gustav Willius,

"Receiver."

On January 6, 1905, the receiver called attention to the general understanding between them, and sent this communication to his attorney:

"Dear Sir:

"In compliance with our understanding, I request you to advise Mr. Jacob Pfenninger at New Ulm that I have placed the claim for his liability on 120 shares of Germania Bank stock into your hands for collection, and oblige.          Yours truly,

"Gustav Willius,

"Receiver."

To this letter Mr. Richardson answered, under date of January 9, 1905:

"Dear Sir:

"Your letter of January 6th in relation to stock liability of Jacob Pfenninger, New Ulm, Minn., is received. I have written Mr. Pfenninger, to-day, and, if he does not pay, will commence suit against him.                               Yours truly,

"Harris Richardson."

On August 17, 1905, Mr. Willius again wrote Mr. Richardson:

"Dear Sir:

"I inclose herein a list of reorganization stockholders having no claims against the bank and considered to be responsible. They have been notified over and over again but do not respond. It seems we ought to begin proceedings against them. Will you kindly take this matter up.                             Yours truly."

And, again on October 24, 1905:

"Harris Richardson, Esq.,

      "St. Paul,

            "Dear Sir:

"It is necessary for us to bring suit at least against some of the stockholders without more delay. Creditors are getting impatient and claims are accumulating in the hands of speculators. A concern in this city has in the course of a few months purchased claims aggregating nearly $25,000. As I have already mentioned to you, there is

talk of an application to the court for an order directing me to proceed at once, or be removed; all of which would of course be very disagreeable. If you have not already prepared the papers, please do so, and oblige."

And another letter of similar import was sent to Mr. Richardson November 14, 1905:

"Dear Sir:

"I had another indication yesterday that the creditors are growing restless. Mr. Woodruff, of Shakopee, one of the largest claimants, criticised me very sharply and said that, unless we would take immediate steps towards the collection of the assessment, he would join in a petition to the court for an order instructing me to proceed against the stockholders without delay, or be removed. I hope you have the matter so far advanced that we can proceed and avoid such unpleasant action.                Yours truly."

On December 14, 1905, he wrote Mr. Richardson the following:

"Dear Sir:

"I am in receipt of another urgent letter from Mr. Crowell, relative to the assessment suits. What can I write him? Please advise me and oblige.                Yours truly,

"Gustav Willius,

"Receiver."

The charge is made by respondents that during the entire administration of the trust Mr. Willius was dilatory in his movements, "and did not make collections and close up the estate with that diligence which the necessities of the case demanded." We have been unable to discover any evidence of negligence on his part after May 27, 1904, with respect to other matters connected with the trust than the collection of the stockholders' liability.

The entire amount surcharged to his account was occasioned by the delay in suing the stockholders, and he is not charged with any loss resulting from negligence in any other respect. A reading of the entire record, together with the letters referred to, clearly indicates that Mr. Willius was acting in the utmost good faith; that he

had complete confidence in his attorney and relied upon him to protect the estate with respect to the stockholders' liability. Although he was in entire ignorance of the effect of the statute, yet he urged his attorney to commence some actions at least for the purpose of forcing collections from the stockholders. He was impressed with the fact that it was his duty to close up the estate with all reasonable diligence, and for that reason saw the necessity of pressing the suits. Why Mr. Richardson delayed bringing those actions, notwithstanding the pressure brought to bear upon him by Mr. Willius, does not very clearly appear. His own explanation is that he was still endeavoring to force settlements without suit. The trial court approved of his administration by allowing his account, and his conduct as the legal adviser of the receiver is not subject to review upon this occasion, except as it may explain the attitude of Mr. Willius. It is urged that it was the receiver's duty to discharge the attorney, and secure the services of another who would carry out his suggestions, and the charge of negligence is based mainly upon this ground. The proper time for commencing actions against the stockholders, and the best method to enforce settlements with them, were questions in which the receiver was justified in taking the advice of his attorney. Nothing had occurred up to that time at least which called for a change of attorneys. Counsel was competent and had been retained with the knowledge of the creditors and the approval of the court. Under the circumstances, the receiver could not be required to foresee that a failure to change attorneys might result in the loss of opportunity to pursue the stockholders.

Respondents also insist that, if the attorney made a mistake of judgment with reference to the statute of limitations, reliance upon his advice in that respect cannot be pleaded as a defense. We believe the proper rule to be that in those cases involving legal questions which make it necessary for a receiver to take the advice of counsel, and competent counsel is employed, and his advice is followed in good faith, that the receiver is not liable for loss resulting therefrom. Such is the general rule in this country, although there are some English cases to the contrary. In Ellig v. Naglee, 9 Cal. 684, 695, it was said by Burnett, J., concurred in by Justice Field: "It is a general principle applicable to trustees, that when they act with good faith, and

without any selfish motive, they are entitled to be treated by a court of equity with liberality and indulgence; and, especially, when they act under the advice of counsel. Trustees act for the benefit of others, and not for themselves, and the fair exercise of their judgments should be a protection to them. Very supine negligence, or wilful default, will render them liable; but to make them liable for mere errors of judgment would tend to discourage good and prudent men from undertaking any trust." This principle was recognized in a later case (In re Sanderson's Estate [Cal.] 13 Pac. 497) as follows: "If an executor delays to take steps for the collection of a debt until after the same is outlawed, and the delay is not in consequence of any mistake of law, or of advice given by his attorney, he will be liable to the estate for the loss occasioned by his negligence."

There is a line of decisions in Pennsylvania recognizing and adopting this doctrine, among which may be mentioned: Appeals of During, King and Miller, 13 Pa. St. 224, where it was held that trustees in insolvency, acting on advice of counsel and in good faith, are not held responsible for proceedings in accordance with such advice. To the same effect, see Neff's Appeal, 57 Pa. St. 91, and Bradley's Appeal, 89 Pa. St. 514, 522, where the previous cases are cited and approved. "Trustees must of necessity seek the advice of counsel in the performance of their duties. Not to do so would, in many instances, be gross negligence. It would be a harsh rule to require trustees to seek legal advice, and then hold them responsible for an error of law committed by their counsel."

The supreme court of Ohio refers to this question in the following manner in Miller v. Proctor, 20 Oh. St. 442: "The maxim that every person is presumed to know the law, is not always applicable to trustees; on the contrary, they may be exonerated from losses resulting from their ignorance of the law, in cases where they exercise proper diligence and precaution, and act upon the advice of counsel."

The New Jersey court of chancery applied the same principle in Powers v. Loughridge, 38 N. J. Eq. 396, wherein it was held that a receiver's conduct appearing to have been prudent, and that he had, by inquiry beforehand, satisfied himself of the integrity of the attorney at that time, he was not liable to the estate for the loss of a claim which was collected by the attorney, who afterwards absconded without paying it over.

The supreme court of Tennessee likewise met the question in James v. Wingo, 75 Tenn. 148, and decided that executors are not required to do more than employ honest and capable attorneys, and, having done this, they are protected in pursuing their advice and trusting to their skill and capacity in attending to the suit. See also Waterman v. Alden, 144 Ill. 90, 32 N. E. 972.

Receivers are required to exercise good faith and reasonable diligence in the administration of the trust (In re Robbins, 36 Minn. 66, 30 N. W. 304; In re Cornell, 110 N. Y. 351, 18 N. E. 142), or, as stated by the learned trial court: He is "required at least to exercise the diligence which a reasonable man of ordinary prudence would have used with reference to his own business affairs."

From a consideration of the record, the following conclusions are unavoidable: Mr. Willius has not been proven guilty of any negligence which was the cause of failure to collect from the stockholders. On the contrary, that loss was the direct result of a mistake on the part of his attorney in assuming that the statute of limitations would not expire until 1909; and, having in good faith relied on the advice of counsel as to the proper time to commence actions against the stockholders, Mr. Willius is not chargeable for the consequences.

Reversed.