PIERCE, Judge.
Appellants Mr. and Mrs. Athanason, plaintiffs below, bring this appeal from a final judgment for the defendants, appellees here.
They filed their complaint in the Pinellas County Circuit Court against defendants Paul S. Hubbard, individually and as Receiver of Lundy’s Inc., and United States Fidelity and Guaranty Company, a bonding company which issued a bond as surety for Hubbard as Receiver. This was a negligence action seeking damages for loss of rent on a store building leased to Lundy’s prior to the receivership.
The Athanasons alleged inter alia that although Hubbard, through an auctioneer employed by him, advertised in newspapers throughout Florida and circulated “handbills” announcing the auction of the assets of Lundy’s, which included assignment of the lease on the Athanasons’ building, and although the Court in the receivership matter ordered Hubbard “to immediately effect all papers, forms, etc., necessary to complete the transfer of this property to the purchasers,” Hubbard failed to execute a written assignment of Athanasons’ lease to the purchaser. Therefore, the Athana-sons alleged they were deprived of rents in the amount of $5,300.00. The amended complaint included a claim for $1,100.00 for damages to the premises when ABC (the purchaser at receiver’s sale) vacated the store and refused to restore the premises to the condition they were in at the time Lundy’s took possession as required by the lease.
Upon completion of the trial without jury, the Court found for Hubbard, “feeling that his actions as far as the negligence suit is concerned do not constitute negligence sufficient to hold him personally liable.” The Court then entered its final judgment from which this appeal was taken.
The record shows that on December 20, 1955, the Athanasons entered into a written lease with Lundy’s to rent their store for a term of twelve years, pursuant to which Lundy’s took possession. On July 6, 1961, Hubbard was appointed Receiver for Lundy’s, Inc. by the Pinellas County Circuit Court. As such receiver he continued to operate the business, paying the Athana-sons the monthly rent called for by the lease, until September 13, 1962, at which time this store and four others were sold to ABC Liquors, Inc., pursuant to order of the Court.
At the sale ABC submitted the highest bid, $50,000.00, on an agreement form which required “the seller * * * to execute all papers necessary to facilitate the transfer of liquor licenses and assignments of leases on the said property.” The Court rejected this bid as insufficient and allowed ABC to submit a subsequent bid which was simply the words and figures :
“66,000 on the 5 Liquor Stores ABC Liquors Inc. J. D. Holloway”
In its order of September 18, 1962, the Court accepted this bid and provided, among other things, “that all other bids are hereby rejected, and the Auctioneer, P. Frank Stuart, is hereby authorized to return the deposit checks to the individual having made said bids.” The first bid and the agreement between the receiver and the bidder was voided. There was no mention of any assignment of lease in the bid accepted by the Court. See ABC Liquors, Inc. v. Athanason, Fla.App.1966, 184 So.2d 521.
*477 ABC continued to pay rent on the premises until November, 1963, at which time it vacated the premises while there was still over three years remaining on the lease. On January 31, 1964, Hubbard executed an assignment of the lease to ABC some three months after the premises had been vacated, because, he testified, “there was some question about the assignment of lease which had come up” and his attorney prepared another one. Hubbard’s bond was . can-celled on June 24, 1963 pursuant to Court order and he was later discharged as receiver and released from all liability and responsibility for the receivership by order of December 3, 1964.
The Athanasons contend that Hubbard, the receiver, has had a vast amount of experience as a receiver; that he was well aware of the lease prior to the sale; that the sale contemplated the transfer and assignment of the lease to the purchaser, as shown by the handbills which contained the words “Lease, $250.00 mo. to 12/31/67”; the newspaper ad which announced that the store would be sold with “licenses, leases and equipment;” and by the language in the bids submitted by the purchaser. They contend in conclusion that Hubbard was negligent in failing to assign the lease to the purchaser, ABC Liquors, Inc., and therefore should be held accountable to them for their loss.
It will be noted that the order approving the sale did not specifically direct Hubbard to assign the Athanason lease, but “ordered, adjudged and decreed, that Paul S. Hubbard, as Receiver, is hereby authorized to immediately effect all papers, forms, etc., necessary to complete the transfer of this property to the purchasers.”
Hubbard testified that he did not recall whether he had executed an assignment of this particular lease; the purchaser testified that he did not know whether he had received a written assignment of the lease; and the purchaser’s attorney testified that he did not remember whether an assignment of the lease was delivered to him at the closing. The record shows that the Athanasons made no inquiries as to an assignment or an assumption of the lease and that they were never informed by the receiver that the lease would be assigned. They received and accepted full rent during the occupancy of the premises.
It has been pointed out in other jurisdictions that complaining creditors, such as the Athanasons in this case, had the right or duty to seek the assistance of the court in requiring the receiver to accept or reject the lease during the receivership. Weber v. Press of H. N. Cornay, Inc., La.App.1962, 144 So.2d 581; Landon v. Public Utilities Commission of Kansas, 245 F. 950 (D.C.Kan.1917); Goodwin v. Noble, 8 El. & Bl. 587, 27 LJQBNS 204, 4 Jur.NS 208; 59 LRA 686. In this case the Athana-sons took no steps to compel Hubbard to elect, but relied upon their own assumptions.
Generally, a receiver is not obligated to carry out the executory contracts of the owner of the estate being administered unless he elects to be bound thereby. Cooper v. McNair, U.S.D.C.Fla.1931, 49 F.2d 778; United Electric Securities Co. v. Louisiana Electric Light Co., 71 F. 615 (C.C.La.1896); Weber v. Press of H. N. Cornay, Inc., supra; Clark on Receivers, § 442 ; 75 C.J.S. Receivers § 170. He is entitled to a reasonable time within which to affirm or disavow a lease, during which time he may retain possession of the leasehold property without being bound by the lease. Under such circumstances he does not become the assignee of the remaining term of the lease. Weber v. Press of H. N. Cornay, Inc., supra; North Kansas City Bridge & R. Co. v. Leness, 82 F.2d 9, C.C. A. 8 Cir. 1936; 75 C.J.S. Receivers § 170; Clark on Receivers, § 442. The question as to what constitutes a reasonable time must be determined from all the surrounding facts and circumstances in each case. North Kansas City Bridge & R. Co. v. Leness, supra; Weber v. Press of H. N. Cornay, Inc., supra.
*478 A receiver is generally held to be liable for rent of the premises demised only while he occupies them. 59 LRA 688 ; 75 C.J.S. Receivers § 170; Clark on Receivers, § 442.
In 59 LRA 694, it is stated:
“The general rule would seem to be that an assignee for the benefit of creditors, who continues in possession of premises leased to his assignor in the conduct of the business of his trust, does not thereby render himself personally liable for rent; to create such a liability there must be a special agreement; and the fact that he has assets does not authorize a recovery in a personal suit against him.”
The record is devoid of any mention of a special agreement between the Athanasons and Hubbard, and in Mr. Athanason’s testimony he admitted that Hubbard never made any representation to him regarding the assignment of the lease.
While not necessary to decision here, it is urged on behalf of Hubbard that he relied upon the advice of competent counsel to handle the closing, prepare the instruments, and direct his every action in the transfer, and therefore he is not liable for consequent losses. Hubbard testified that he employed counsel who prepared all papers and other documents necessary for him to act as receiver, who advised him as to what he could or could not do as a receiver, and that his actions were all based upon advice from his attorney.
The general rule is that in cases involving legal questions which make it necessary for a receiver to take the advice of counsel, and competent counsel is employed whose advice is followed in good faith, the receiver is not liable for loss resulting therefrom. State ex rel. Pope v. Germania Bank, 1908, 106 Minn. 164, 118 N.W. 683; 45 Am.Jur., Receivers, § 354; Clark on Receivers, § 414.
The trial Judge correctly found m favor of the appellees' and his judgment is therefore
Affirmed.
LILES, C. J., and MANN, J., concur.