1998 ND 78

The PERRY CENTER, INC.,
Plaintiff and Appellant,

v.

Heidi HEITKAMP, individually and in her official capacity as Attorney General of North Dakota; David W. Huey, individually and in his official capacity as Assistant Attorney General of North Dakota; Wayne Drewes, individually and in his official capacity as receiver for Family Life Services, Inc. and Help and Caring Ministries, Inc.; Henry C. Wessman, individually; and Carol Olson, in her official capacity as Director of the North Dakota Department of Human Services, Defendants and Appellees.

Civil No. 970218.

Supreme Court of North Dakota.

April 8, 1998.

Richard D. Varriano, Moorhead, for plaintiff and appellant. Argued by Peter B. Crary, Fargo, on behalf of Richard D. Varriano.

Douglas A. Bahr, Assistant Attorney General, Bismarck, for defendants and appellees Heidi Heitkamp and David W. Huey.

Bruce H. Carlson, of McNair, Larson & Carlson, Ltd., Fargo, for defendant and appellee Wayne Drewes.

Paul J. Noah and Bruce D. Quick, of Vogel, Kelly, Knutson, Weir, Bye & Hunke, Ltd., Fargo, for defendants and appellees Henry C. Wessman and Carol Olson.

SANDSTROM, Justice.

[¶ 1] The Perry Center, Inc. appeals from a judgment dismissing on the pleadings its action against Attorney General Heidi Heitkamp and Assistant Attorney General David W. Huey; summary judgments dismissing its action against Henry C. Wessman, former Director of the Department of Human Services (Department), and his successor in office, Carol Olson, and against Wayne Drewes, a court-appointed receiver; and an order denying its motion to amend one of the judgments. We hold the trial court properly dismissed Perry Center's lawsuit under various doctrines of governmental immunity, and we affirm.

I

[¶ 2] The circumstances underlying this action involve the relationship between Family Life Services, Inc., Help and Caring Ministries, Inc., and Perry Center. Family Life Services is a debt servicing business which contracts with persons having difficulty paying debts and provides a variety of budget management services. Help and Caring Ministries contracts to provide management services for businesses. Help and Caring Ministries had a management agreement with Perry Center, which operated a nonprofit Christian maternity home in Fargo. The management services agreement provided in part:

"HELP & CARING MINISTRIES will, in return for said compensation, provide the day to day management services of the agency. This shall include but not be limited to providing secretarial services, financial direction and planning, office equipment, office space, office supplies, and other services generally associated with management duties. Help & Caring Ministries or its Designee has the power on behalf of said agency to borrow and loan money as part of its day to day financial management responsibilities."

The management services agreement also provided it would "continue in perpetuity or until such time that either agency is dissolved or a 30 day written notice of cancellation of said agreement is presented by one party to the other."

[¶ 3] In January 1996 the State, through the Attorney General, brought a receivership action against Family Life Services and Help and Caring Ministries. The State alleged financial improprieties in connection with the business activities of those corporations, their former administrators, and members of their boards of directors. The district court appointed Drewes, a Fargo accountant, receiver for the corporations. The court order allowed the receiver to take possession of the corporations' assets, facilities, and offices, and to manage and operate their businesses. The order also specifically allowed the receiver to "accept or reject any executory contract of these defendants as in the judgment of the receiver is proper."

[¶ 4] During the course of the receivership, Drewes communicated on several occasions with Huey. Huey told Drewes about disposing of vehicles, preparing tax returns, and employment matters involving the businesses. Huey also told Drewes how to handle various matters concerning Perry Center.

[¶ 5] In April 1996 Perry Center brought this lawsuit against the defendants, asserting three causes of action and seeking injunctive and monetary relief. The first cause of action alleged Drewes alone converted Perry Center property. The second cause of action alleged Heitkamp, Huey, and Wessman conspired with Drewes to deprive Perry Center of its property. The third cause of action, grounded on 42 U.S.C. § 1983, alleged Heitkamp, Huey, and Drewes attempted to force a change in Perry Center's board of directors by refusing it access to its mail and mailing list, and conspired "to deprive the Perry Center of its Christian character in violation of its right to the free exercise of religion."

[¶ 6] The trial court granted Heitkamp and Huey's motion to dismiss, ruling Perry Center's complaint failed to state a cause of action against them. The court then granted summary judgment dismissing Perry Center's claims against Drewes and Wessman, who was substituted under N.D.R.Civ.P. 25(d) as a party by his successor in office, Olson. The court also denied Perry Center's motion to amend the judgment.

[¶ 7] The trial court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. § 27–05–06. Perry Center's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. Art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

[¶ 8] Perry Center asserts the trial court erred in refusing to grant its N.D.R.Civ.P. 56(f) motion for continuance before granting summary judgment in favor of Wessman and Drewes.

[¶ 9] After the summary judgment motions were filed, Perry Center moved for a Rule 56(f) continuance in order to complete discovery before responding to the motions. Perry Center argued Wessman and Drewes had not yet answered interrogatories, and without those answers, Perry Center would be unable to support its claim for punitive damages. Drewes served his responses to the interrogatories by mail three days before the hearing on the summary judgment motions. Wessman responded two days before the hearing. At the hearing, Perry Center asserted it had not had enough time to review the responses and requested a Rule 56(f) continuance. The trial court denied the motion, concluding the answers to the interrogatories had been completed and filed with the court.

[¶ 10] Because Rule 56(f) is intended to provide an additional safeguard against an improvident or premature grant of summary judgment, the rule generally should be applied liberally to achieve that objective. *See Johnson Farms v. McEnroe*, 1997 ND 179, ¶ 27, 568 N.W.2d 920. Nevertheless, there are limits regarding when relief under Rule 56(f) should be granted. For instance, when further discovery would not involve an issue which is the subject matter of the summary judgment motion, a trial court does not abuse its discretion in deciding the motion without granting the Rule 56(f) request. *See Powers v. McGuigan*, 769 F.2d 72, 76 (2nd Cir.1985). Rule 56(f) discretion must also be

limited when a summary judgment motion is based on governmental immunity because insubstantial lawsuits against government officials should be resolved prior to discovery and on summary judgment, if possible. *See Jones v. City and County of Denver, Colo.,* 854 F.2d 1206, 1211 (10th Cir.1988).

[¶ 11] The original interrogatory responses were part of the record, and at the summary judgment hearing, Perry Center argued extensively about those responses. Perry Center claimed the responses related to elements of malice and oppression necessary to support an award of punitive damages. Although Perry Center sought permission to amend its complaint to demand punitive damages, the dispositive issues in the summary judgment proceedings involved potential liability and not damages. Under the circumstances, we conclude the trial court did not abuse its discretion in deciding the summary judgment motions without granting Perry Center's request for further time for discovery.

### III

[¶ 12] Summary judgment is a procedure for the prompt and expeditious disposition of a controversy without trial if either litigant is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving factual disputes would not alter the result. *Global Financial Services, Inc. v. Duttenhefner,* 1998 ND 53, ¶ 5, 575 N.W.2d 667. On appeal, we review the evidence in the light most favorable to the party opposing the summary judgment motion. *Freed v. Unruh,* 1998 ND 34, ¶ 6, 575 N.W.2d 433.

### A

[¶ 13] Perry Center asserts the trial court erred in granting summary judgment dismissal of its conversion claim against Drewes. The trial court concluded, as a matter of law, Drewes did not convert Perry Center property because the management services agreement between Help and Caring Ministries and Perry Center allowed Drewes, in his capacity as receiver for Help and Car-

ing Ministries, to control Perry Center property.

[¶ 14] When Drewes was appointed receiver, he found a computerized donor list which had been used by Help and Caring Ministries to raise funds and to circulate mailings. Drewes was given a mailbox key and access to a post office box for Family Life Services, Help and Caring Ministries, and Perry Center. Drewes also discovered the management agreement between Help and Caring Ministries and Perry Center. Drewes acquired $1,884 in checks payable to Perry Center and other mail sent to the post office box. Drewes deposited Perry Center checks in a separate account in a Fargo bank.

[¶ 15] Perry Center asserted it was entitled to the Help and Caring Ministries donor list and claimed the management agreement had been voided before the receivership proceeding was brought. Instead of applying for relief in the state court receivership proceeding, Perry Center in January 1996 sought a declaratory judgment in United States District Court declaring the Nonprofit Corporation Act, former N.D.C.C. Chapter 10–26, was unconstitutional, and requiring Drewes to provide it with access to the donor list. Perry Center also sought damages under 42 U.S.C. § 1983 for deprivation of constitutional rights. The federal court denied Perry Center's request for an ex parte preliminary injunction, deciding it would defer to state court for a ruling on Perry Center's alleged right to the donor list. Instead of applying to the court in the receivership action, Perry Center began this lawsuit.

[¶ 16] In May 1996 Drewes filed a notice of interpleader in the state court receivership proceeding and asked for permission to deposit with the clerk of court the donor list and Perry Center checks. At the hearing on the motion, a May 1993 management services agreement between Help and Caring Ministries and Perry Center was presented to the court. The agreement granted broad financial management responsibility to Help and Caring Ministries, and indicated the agreement was terminable at the will of either party. The court in the receivership action denied the motion for interpleader and directed Drewes to give a copy of the donor list

and the checks to a Perry Center representative. Drewes complied with the court order.

[¶ 17] In September 1996 Drewes moved for summary judgment in the federal action. Perry Center responded with a stipulation for dismissal with prejudice, which was executed and approved by the federal court in October 1996. The judgments which are the subject of this appeal were entered in October and December 1996, and May 1997. Although Drewes asserts the dismissal of the federal lawsuit is res judicata and bars this proceeding, it is unnecessary for us to decide that issue.

[¶ 18] Conversion is the tortious detention of personal property from the owner, or its destruction, or a wrongful exercise of dominion or control over the property inconsistent with or in defiance of the owner's rights. *Sargent County Bank v. Wentworth,* 547 N.W.2d 753, 762 (N.D.1996). An act which might otherwise constitute a conversion, however, is privileged when authorized by a facially valid court order. *Kummer v. City of Fargo,* 516 N.W.2d 294, 299 (N.D. 1994).

[¶ 19] A receiver is an officer or arm of the court and acts under the direction and supervision of the court. *See* N.D.C.C. § 32–10–04; 65 Am.Jur.2d *Receivers* § 2 (1972); 75 C.J.S. *Receivers* § 1 (1952). A receiver takes possession of and preserves, pending litigation, and, for the benefit of the party ultimately entitled to it, the fund or property in litigation. *See Vorachek v. Citizens State Bank of Lankin,* 461 N.W.2d 580, 584 (N.D. 1990). As this Court explained in *Gilbertson v. Northern Trust Co.,* 53 N.D. 502, 207 N.W. 42, Syllabus 1 (1925):

> "A receiver takes the estate of an insolvent for the benefit of the creditors. He is, in effect, an assignee, and stands in the shoes of the insolvent with exactly the same rights and obligations that the latter had at the moment of insolvency; ..."

[¶ 20] The broad powers usually afforded a receiver include the power to accept or reject executory contracts unfinished or subsisting at the time of appointment in order to preserve the assets of the estate and to promote the best interests of all parties.

*See Real Estate Marketers, Inc. v. Wheeler,* 298 So.2d 481, 483 (Fla.Ct.App.1974); *Athanason v. Hubbard,* 218 So.2d 475, 477 (Fla. Ct.App.1969); 66 Am.Jur.2d *Receivers* § 223 (1973); 75 C.J.S. *Receivers* § 186 (1952). While a receiver's powers may be broad in scope, a receiver has only such powers as are conferred by statute and the court order appointing him. *See State v. Cleveland,* 241 Ind. 206, 171 N.E.2d 255, 257 (1961). A receiver has no right to property which does not belong to the entity over which the receiver was appointed. *See Tourist Channel, Inc. v. Namey,* 568 So.2d 543, 544 (Fla.Ct. App.1990). Essentially, a receiver acts under control and direction of the court.

[¶ 21] Because receivers are court officers, it has been uniformly held a court-appointed receiver is entitled to absolute derivative judicial immunity. *See, e.g., New Alaska Development Corp. v. Guetschow,* 869 F.2d 1298, 1303 (9th Cir.1989); *Property Management & Investments, Inc. v. Lewis,* 752 F.2d 599, 602 (11th Cir.1985); *Kermit Const. v. Banco Credito Y Ahorro Ponceno,* 547 F.2d 1, 2 (1st Cir.1976). The rationale for this immunity precludes receivers from becoming "a lightning rod for harassing litigation aimed at judicial orders." *Kermit* at 3. Receivers are therefore entitled to share the broad immunity from suit conferred upon judges when receivers are acting in the scope of their authority and in accordance with court order. *See Bennett v. Williams,* 892 F.2d 822, 823 (9th Cir.1989). The derivative judicial immunity afforded a receiver applies to both federal and state law claims. *See Davis v. Bayless,* 70 F.3d 367, 374 (5th Cir.1995). This Court similarly ruled in *Bernhardt v. Rummel,* 314 N.W.2d 50, 62 (N.D.1981), as long as a court-appointed receiver is acting under and in accordance with the court's directions, the receiver is immune from suit.

[¶ 22] Since absolute judicial immunity is intended to limit harassment of receivers "as quickly as possible," a plaintiff must allege judicial immunity does not apply because the receiver's ultimate actions were not judicial or were clearly beyond the scope of

the receiver's jurisdiction. *Guetschow* at 1303.

[¶ 23] Perry Center asserts Drewes acted beyond the scope of his authority because he became its receiver without any court authorization. Perry Center was not explicitly under receivership of the court. However, the court gave Drewes specific authority to accept or reject Help and Caring Ministries' executory contracts. One of those contracts Drewes apparently chose to accept was the management services agreement between Help and Caring Ministries and Perry Center. Although Perry Center asserts its board of directors had voted to terminate the agreement in January 1996, the agreement on its face was broad enough to allow Drewes to exercise authority over the checks, mail, and the donor list. Contrary to Perry Center's argument, a receiver need not have prior court approval for every single detail of a receivership that may raise a question concerning authority. *See 2 Clark, Law of Receivers* § 396(c) (1959). Drewes' actions were well within the authority of the receivership and, when he learned of a dispute, Drewes sought instructions from the appointing court. Upon receiving those instructions, Drewes turned the disputed property over to Perry Center. Nothing in the record supports Perry Center's claim Drewes acted clearly beyond the authority of his office.

[¶ 24] We conclude Drewes' alleged acts of conversion and conspiracy in violation of state and federal law are all protected by a receiver's absolute derivative judicial immunity. The trial court did not err in granting summary judgment dismissal of Perry Center's claims against Drewes.

## B

[¶ 25] Perry Center asserts the trial court erred in granting summary judgment dismissal of its claim Wessman conspired with Drewes to deprive it of its property.

### 1

[¶ 26] The Department licensed Perry Center and conducted periodic licensure reviews. On February 9, 1996, Wessman wrote a letter to Drewes to determine "who controls the Perry Center." In the letter, Wessman wrote:

"The Department requests that you seek judicial clarification of your role with the Perry Center as the receiver of Help and Caring Ministries. We understand that financial needs have been expressed by the Perry Center staff to Mr. Huey of the Attorney General's office and that there is a concern that funds may have been diverted from the Perry Center leaving the Center financially strapped.

"The Department will continue our role in licensure of the Perry Center and our review of its operations. We request your assistance in clarifying the relationship of the Perry Center to Help and Caring Ministries in the areas of administration and finance. The Department requests that you assume management of the Perry Center under a management agreement we believe to be in effect between the Perry Center and Help and Caring Ministries."

[¶ 27] Perry Center asserts this letter demonstrates Wessman directly instructed Drewes to exercise control over its property, and Wessman therefore is responsible for Drewes' alleged conversion of the property.

[¶ 28] N.D.C.C. § 32–12.2–02(3)(b) provides:

"Neither the state nor a state employee may be held liable for any of the following claims:

\*     \*     \*     \*     \*     \*

"b.  A claim based upon a decision to exercise or perform or a failure to exercise or perform a discretionary function or duty on the part of the state or its employees, regardless of whether the discretion involved is abused or whether the statute, order, rule, or resolution under which the discretionary function or duty is performed is valid or invalid."

[¶ 29] The test we apply when determining governmental liability and discretionary acts distinguishes between immune discretionary acts and non-immune ministerial acts. *See Olson v. City of Garrison*, 539 N.W.2d 663, 665 n. 3 (N.D.1995). The dis-

tinction between discretionary and ministerial acts is often one of degree and is determined by a consideration and evaluation of a number of competing factors under the particular circumstances of each case. *See Miles Homes v. City of Westhope*, 458 N.W.2d 321, 325 (N.D.1990). This Court summarized the relevant factors for making the distinction in *Loran v. Iszler*, 373 N.W.2d 870, 873 (N.D.1985):

" '(1) The nature and importance of the function that the officer is performing.

" '* * * * * *

" '(2) The extent to which passing judgment on the exercise of discretion by the officer will amount necessarily to passing judgment by the court on the conduct of a coordinate branch of government.

" '* * * * * *

" '(3) The extent to which the imposition of liability would impair the free exercise of his discretion by the officer.

" '* * * * * *

" '(4) The extent to which the ultimate financial responsibility will fall on the officer.

" '* * * * * *

" '(5) The likelihood that harm will result to members of the public if the action is taken.

" '* * * * * *

" '(6) The nature and seriousness of the type of harm that may be produced.

" '* * * * * *

" '(7) The availability to the injured party of other remedies and other forms of relief. . . .' "

(Quoting Comment f to *Restatement (Second) of Torts* § 895D). As the Court noted in *Loran* at 874, if a public official "goes entirely beyond the scope of his authority and does an act that is not permitted at all by his duty, he is not acting in his official capacity and he has no more immunity than a private citizen."

[¶ 30] Perry Center asserts Wessman's discretionary act immunity defense is inapplicable to this case because "it is not a dis-cretionary act of the head of an executive department of state government to control a receiver in a civil action." Because only an appointing court has this authority, Perry Center argues Wessman acted beyond his jurisdiction and intruded on a judicial function. According to Perry Center, Wessman should have approached the appointing court rather than "instruct" Drewes to seize its property.

[¶ 31] Under North Dakota law, the Department has the important function of licensing maternity homes. *See* N.D.C.C. Chapter 50–19. One of the requirements for licensure is "[t]he persons in active charge of the home and their assistants are qualified by training and experience to carry on efficiently the duties required of them." N.D.C.C. § 50–19–03(2). We conclude Wessman's correspondence with Drewes cannot reasonably be construed as an attempt by an executive department to improperly "control" a court-appointed receiver. Drewes was under supervision of the court, not Wessman. Wessman's requests for Drewes to seek judicial clarification of his role regarding Perry Center and assume its management under the agreement were actions taken in accordance with the statutory requirements for the licensure and regulation of maternity homes by the Department.

[¶ 32] Wessman's actions were not ministerial acts entirely beyond the scope of his authority. *Compare Miles Homes* at 327 (auditor's statutory duty to search file of tax payment receipts for taxpayer's secondary address upon return of undelivered notice is not immune discretionary act). Rather, we conclude Wessman's actions were immune discretionary acts taken within the ambit of his role as director of the Department.

[¶ 33] We therefore conclude the discretionary function exception to governmental liability bars Perry Center's conversion claim against Wessman, and the trial court did not err in granting summary judgment dismissal of the claim.

2

[¶ 34] In order to successfully sue Wessman in his personal capacity for conversion, Perry Center must allege and prove

Wessman's "actions or omissions constitute reckless or grossly negligent conduct, malfeasance, or willful or wanton misconduct." N.D.C.C. § 32–12.1–15(2). When a plaintiff fails to plead a sufficient level of culpability to avoid the grant of immunity to a state employee, summary dismissal is appropriate. *See Schloesser v. Larson,* 458 N.W.2d 257, 260 (N.D.1990), *overruled on other grounds, Bulman v. Hulstrand Const. Co., Inc.,* 521 N.W.2d 632 (N.D.1994). If a reasonable factfinder could not find the heightened level of culpability for state employees from the allegations and the evidence presented on a summary judgment motion, summary judgment dismissal is also appropriate. *See Wishnatsky v. Bergquist,* 550 N.W.2d 394, 403 (N.D.), *cert. denied,* —— U.S. ——, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996).

[¶ 35] In this case, not only did Perry Center fail to plead Wessman acted with required culpability, but no reasonable factfinder could find from the evidence in the record his conduct rose to the level of recklessness, gross negligence, malfeasance, or willful or wanton misconduct. We therefore conclude Wessman is immune from liability in his personal capacity, and the trial court correctly granted summary judgment dismissal of Perry Center's conversion claim against him.

### 3

[¶ 36] Perry Center's 42 U.S.C. § 1983 claim against Wessman asserts he conspired in a "systematic campaign to compel the Perry Center to surrender its religious autonomy—by forcing it either to cease operation or to acquiesce in state control."

[¶ 37] Insofar as Wessman, and now Olson, were sued in their official capacities, the trial court correctly dismissed this claim. Neither a state, an entity with Eleventh Amendment immunity, nor state officials sued in their official capacity are "persons" under 42 U.S.C. § 1983, and neither is subject to suit under the statute in federal or state court. *See Livingood v. Meece,* 477 N.W.2d 183, 190 (N.D.1991); *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71–73, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).

[¶ 38] State officials sued for damages in their personal or individual capacities, however, are "persons" under 42 U.S.C. § 1983. *See Livingood* at 191; *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). State officials sued in their individual capacities may assert a qualified immunity from liability, which is intended "to protect public officials from undue interference with their duties and from potentially disabling threats of liability." *Wishnatsky* at 400. The doctrine "recognizes the need of government officials to be free from harassing lawsuits and apprehension of personal liability when they exercise authority and discretion while performing their jobs in the public interest." *Livingood* at 192.

[¶ 39] Determining whether the defense applies requires an objective inquiry into the legal reasonableness of the official action considering the context of the circumstances confronting the official. *Wishnatsky* at 400. Questions of qualified immunity are usually ones of law for a court to decide. *Wishnatsky.* If a reasonable official could have believed the challenged actions were lawful, the claim should be dismissed before discovery and on summary judgment, if possible. *Wishnatsky* at 401.

[¶ 40] The Department acts as licensing agent for maternity homes. Wessman's requests for Drewes to seek judicial clarification of his role with Perry Center and assume management under the terms of the agreement were certainly actions a reasonable government official could have believed were lawful. We conclude Wessman is entitled to qualified immunity from suit against him in his individual capacity under 42 U.S.C. § 1983. The trial court properly granted summary judgment dismissal of Perry Center's claim against Wessman and Olson.

### IV

[¶ 41] Perry Center argues the trial court erred in dismissing its conversion and 42 U.S.C. § 1983 claims against Heitkamp and Huey. The trial court ruled Perry Center's complaint against them failed to state a claim upon which relief could be granted.

[¶ 42] Under N.D.R.Civ.P. 12(b)(v), a complaint should not be dismissed unless it appears beyond doubt the plaintiff can prove no facts which would entitle the plaintiff to relief. *Johnson & Maxwell, Ltd. v. Lind,* 288 N.W.2d 763, 765 (N.D.1980). We construe the complaint in the light most favorable to the plaintiff, and the well-pleaded allegations in the complaint are taken as true. *Livingood* at 188. A motion to dismiss on the pleadings should be granted only if it is disclosed with certainty the impossibility of proving a claim for which relief can be granted. *Williams v. State,* 405 N.W.2d 615, 620 (N.D.1987).

### A

[¶ 43] Perry Center's complaint alleges Heitkamp, through Huey, brought the lawsuit and injunction against Family Life Services and Help and Caring Ministries, and the court, at the instigation of Heitkamp and Huey, caused those corporations "to be thrown into receivership." The complaint also alleges Drewes took all of his actions regarding Perry Center checks, mail, and the mailing list at the direction of Huey, who was acting as Heitkamp's agent. The complaint alleges Huey told Darold and Patricia Larson "if they wanted to have access to the Perry Center mailing list, they would have to change the membership of the Perry Center board of directors to be acceptable to him."

[¶ 44] The complaint alleges Huey and Heitkamp violated 42 U.S.C. § 1983 because, by refusing access to the ministry mailing list, they attempted to force a change in Perry Center's board of directors in violation of its "First Amendment right to operate as a religious institution according to its own expression of faith." It further alleges Huey and Heitkamp conspired with Drewes and Wessman to deprive Perry Center of its property and bring it under Drewes' unauthorized and illegal control.

### B

[¶ 45] The Attorney General is the chief prosecutorial officer for the state. *See* N.D.C.C. § 54-12-01. Prosecutors may be entitled to either absolute or qualified immunity from civil liability under 42 U.S.C.

§ 1983 for actions undertaken in accordance with their official duties. In *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the United States Supreme Court held criminal prosecutors are absolutely immune from civil liability for actions taken in their role as quasi-judicial officers. The Court reasoned:

> "A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate.... Further, if the prosecutor could be made to answer in court each time such a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law."

*Imbler,* 424 U.S. at 424–425, 96 S.Ct. at 992. While absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct intimately associated with the judicial process, prosecutors have only the protection of qualified immunity when functioning in the role of an administrator or investigative officer rather than in the role of an advocate. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 269–274, 113 S.Ct. 2606, 2613–2616, 125 L.Ed.2d 209 (1993). The procedural difference between the two immunities is significant. Absolute immunity defeats a suit at the outset, while an official with qualified immunity must establish his or her conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

[¶ 46] Although *Imbler* involved a state prosecuting attorney, courts have held assistant prosecutors, *see, e.g., Rogers v. Bruntrager,* 841 F.2d 853, 856 (8th Cir.1988), as

well as state assistant attorneys general are also entitled to absolute prosecutorial immunity. *See, e.g., Murphy v. Morris,* 849 F.2d 1101, 1105 (8th Cir.1988).

[¶ 47] Federal courts have held absolute prosecutorial immunity applies to prosecutors who bring some types of· civil proceedings. These cases rely on the Supreme Court's decision in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), where the Court analogized government administrative proceedings to criminal prosecutions and held a federal agency attorney who brought an enforcement proceeding to revoke the registration of a commodity futures commission merchant was entitled to absolute immunity in a 42 U.S.C. § 1983 damage action. The Court reasoned:

"We also believe that agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts. The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution. An agency official, like a prosecutor, may have broad discretion in ·deciding whether a proceeding should be brought and what sanctions should be sought. . . .

"The discretion which executive officials exercise with respect to the initiation of administrative proceedings might be distorted if their immunity from damages arising from that decision was less than complete. . . . While there is not likely to be anyone willing and legally able to seek damages from the officials if they do *not* authorize the administrative proceeding, . . . there is a serious danger that the decision to authorize proceedings will provoke a retaliatory response. An individual targeted by an administrative proceeding will react angrily and may seek vengeance in the courts."

*Butz,* 438 U.S. at 515, 98 S.Ct. at 2915 (emphasis in original).

[¶ 48] Applying this rationale, several courts have extended absolute immunity to the conduct of a prosecutor in a civil forfeiture proceeding, concluding because a prosecutor's duties are often functionally analogous in civil and criminal proceedings, absolute immunity applies. *See Mendenhall v. Goldsmith,* 59 F.3d 685, 691 (7th Cir.), *cert.. denied,* 516 U.S. 1011, 116 S.Ct. 568, 133 L.Ed.2d 492 (1995); *Schrob v. Catterson,* 948 F.2d 1402, 1409 (3rd Cir.1991); *Cole v. Sharp,* 898 F.Supp. 799, 803 (D.Kan.1995); *Juide v. City of Ann Arbor,* 839 F.Supp. 497, 501 (E.D.Mich.1993). *See also Amos v. State, Dept. of Legal Affairs,* 666 So.2d 933, 935 (Fla.Ct.App.1995). The essential inquiry in determining if absolute prosecutorial immunity applies in a civil proceeding is whether the defendant was functioning in an enforcement role analogous to that of a prosecutor. *Buckley,* 509 U.S. at 271–272, 113 S.Ct. at 2615.

### 1

[¶ 49] The Attorney General has statutory authority to commence a civil consumer protection action. *See* N.D.C.C. §§ 10–33–107(1)(d) (formerly 10–26–07), 13–07–07, 51–12–14, 51–15–04, 51–15–07, 54–12–01(2), 54–12–02, 54–12–17. The obvious purpose of a civil consumer protection action in which a receiver is appointed is protection of the public. The decision to initiate a civil consumer protection action is closely analogous to. a prosecutor's discretionary decision to initiate a criminal proceeding. *See Brewer v. Hill,* 453 F.Supp. 67, 69 (N.D.Tex.1978) (attorney general and his deputies were entitled to absolute prosecutorial immunity for bringing civil deceptive trade practices consumer protection action because the reasons for affording immunity "are the same as if the Attorney General or one of his deputies had been seeking an indictment and prosecuting a criminal action"); *see also Ledwith v. Douglas,* 568 F.2d 117, 119 (8th Cir.1978) (attorney general and deputies were entitled to absolute prosecutorial immunity for bringing civil consumer protection action under deceptive trade practices act). Exposing a prosecutor to personal liability for initiating a consumer protection action could distort this discretion by causing the prosecutor to hesitate before carrying out this public duty. *See Butz.* Moreover, the defendants in the receivership action had ample opportunity to

challenge the legality of that proceeding. *Butz.* We believe the duties of a prosecutor in a civil consumer protection action are sufficiently analogous to those of a criminal prosecutor to afford Heitkamp and Huey absolute prosecutorial immunity for initiating and bringing the receivership action against Family Life Services and Help and Caring Ministries.

### 2

[¶ 50] Perry Center asserts no absolute immunity is available for Huey's conversation with the Larsons about an acceptable board of directors and for directing Drewes to seize its property as part of a "campaign" against Perry Center. Although Huey and Heitkamp assert they are also entitled to absolute immunity for this alleged misconduct because it constituted negotiation activity intimately associated with prosecution of the consumer protection action, *cf. Arnold v. McClain,* 926 F.2d 963, 967 (10th Cir.1991) (prosecutor's action in securing employee's resignation in exchange for promise not to file perjury charge was sufficiently similar to plea bargaining to warrant absolute immunity), we need not decide the question. Even if absolute immunity does not apply to this conduct, Huey and Heitkamp would still be afforded qualified immunity.

[¶ 51] It was not possible for Huey to "direct" Drewes in the course of the receivership action because a receiver acts only under the direction and supervision of the court. *See* N.D.C.C. § 32–10–04; 65 Am. Jur.2d *Receivers* § 2 (1972); 75 C.J.S. *Receivers* § 1 (1952). Huey's communications with Drewes cannot be viewed as legal advice, but as advocating on behalf of the consumer protection division of the attorney general's office. Advocating is not synonymous with "controlling." Drewes determined, based upon appropriate direction from the court, how to manage the receivership. Perry Center does not cite, nor have we found, any cases suggesting it is somehow improper for an advocate in a receivership proceeding to communicate with the receiver regarding the affairs of the receivership. Huey's alleged conversation with the Larsons about his required approval of Perry Center's board of directors must also be viewed in the context of his role as advocate in the receivership proceeding because Huey did not possess this power. We conclude as a matter of law this allegedly illegal conduct on the part of Huey and Heitkamp did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow.* The trial court did not err in dismissing on the pleadings Perry Center's 42 U.S.C. § 1983 claims against Heitkamp and Huey.

### C

[¶ 52] Perry Center asserts there is no immunity available for Heitkamp and Huey regarding its state law claim they participated in Drewes' alleged conversion of its property.

### 1

[¶ 53] Insofar as Perry Center relies on Heitkamp and Huey's commencement of the consumer protection action as their participation in the alleged conversion, absolute prosecutorial immunity bars this claim. With regard to their other actions, Heitkamp and Huey cannot be liable in their official capacities for claims "based upon a decision to exercise or perform or a failure to exercise or perform a discretionary function or duty on the part of the state or its employees, regardless of whether the discretion involved is abused...." N.D.C.C. § 32–12.2–02(3)(b).

[¶ 54] All of the allegations against Heitkamp and Huey relate to their conduct during the course of the receivership action. Huey's conduct as an advocate was of a discretionary rather than ministerial nature. We conclude the discretionary function exception to governmental liability bars the conversion claim against Heitkamp and Huey in their official capacities.

### 2

[¶ 55] Under N.D.C.C. §§ 32–12.2–01(6) and 32–12.2–03, Heitkamp and Huey can be held liable in their personal capacities for Perry Center's state law claim of conspiracy to convert its property only if their actions constituted reckless or grossly negli-

gent conduct, malfeasance, or willful or wanton misconduct.

[¶ 56] Perry Center did not plead these heightened culpability standards required to hold Heitkamp and Huey liable in their personal capacities. *See Schloesser* at 260. Moreover, even if the allegations in the complaint are taken as true, insofar as Huey and Heitkamp could act only in their capacity as an advocate in the receivership proceedings, none of their actions as a matter of law constitute recklessness, gross negligence, malfeasance, or willful or wanton misconduct. *See Wishnatsky* at 403.

[¶ 57] We conclude the trial court correctly dismissed on the pleadings Perry Center's state law claim against Heitkamp and Huey.

## V

[¶ 58] The judgments of dismissal and the order denying the motion to amend are affirmed.

[¶ 59] VANDE WALLE, C.J., and NEUMANN, MARING and MESCHKE, JJ., concur.